Norman ASHCROFT, et al., Appellants,

v.

TAD RESOURCES INTERNATIONAL, Respondent.

No. WD 53833.

Missouri Court of Appeals, Western District.

May 12, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1998.

Application for Transfer Denied Aug. 25, 1998.

Michael W. Manners, Independence, for Appellants.

Pamela J. Taylor, Independence, for Respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Norman Ashcroft, Doug Faulkner, Brent Sauer and Howard Tumbleson appeal the circuit court's judgment denying their motion for a new trial following a jury verdict awarding each of them compensatory damages, but no punitive damages, in their suit for fraud against TAD Resources International (TAD), respondent. In their sole point on appeal, the appellants claim that the trial court erred in overruling their motion for a new trial because they were not allowed to fairly qualify the jury in that their trial counsel should have been permitted to ask the venire about their attitudes toward awarding punitive damages, but was prevented from doing so, which resulted in prejudice to them.

We reverse and remand.

### Facts

On August 2, 1993, Norman Ashcroft, Doug Faulkner, Dave Haskins, Eric Martin, Howard Tumbleson, Zack Marquardt and Brent Sauer filed a petition for damages against TAD Technical Services Corporation [1] alleging that TAD fraudulently misrepresented that they could become skilled in computer-aided drafting by taking a drafting technology course at its school. On January 21, 1995, Eric Martin dismissed his claim without prejudice.

On October 21, 1996, the case proceeded to trial. In the course of jury selection, counsel for the appellants, Michael Manners, inquired as to the venirepersons' attitudes about awarding a substantial amount of money should they find TAD liable. In response to the question, one venireperson, Lana Cramer, indicated that she would have a problem in awarding someone more than out-of-pocket expenses. Following up on venireperson Cramer's answer, Mr. Manners then

attempted to inquire as to the panel members' attitudes toward awarding punitive damages, using the language of MAI 10.01 [1990 Revision],[2] by asking:

> ... [i]t may very well be that during the course of the trial the judge instructs you that if you believe the conduct of TAD Technical Institute was outrageous and showed conscious disregard for the rights ...

Counsel for the respondent, Steve Burmeister, interrupted the inquiry at that point and objected on the basis that such a line of questioning was inappropriate in a bifurcated trial pursuant to § 510.263 [3]. The court stated that it would allow the plaintiffs to further question Ms. Cramer on the issue of punitive damages individually during lunch. However, the court made it clear that it would not allow Mr. Manners to inquire about the attitudes of the rest of the panel towards punitive damages. Mr. Manners then inquired as to what venirepersons would have a problem awarding damages other than out-of-pocket expenses, to which six venirepersons indicated that they might have a problem. The court then indicated that court would be recessed for lunch.

During the lunch break, the court allowed Mr. Manners to individually question venireperson Cramer about her attitudes toward punitive damages using the language from MAI 10.01. She was the only venireperson who was questioned as to punitive damages. After lunch, Mr. Manners did not attempt to revisit the issue of punitive damages with the rest of the panel. After *voir dire* was completed, Mr. Manners moved to strike for cause the six venirepersons who indicated a reluctance to award damages in excess of out-of-pocket expenses. The court struck all six jurors for cause.

---

1. TAD later changed its name to TAD Resources International.

2. MAI 10.01 [1990 Revision] provides:
 If you find the issues in favor of plaintiff, and if you believe the conduct of the defendant as submitted in Instruction Number ___ (*here insert number of plaintiff's verdict directing instruction*) was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any

damages to which you find plaintiff entitled under Instruction Number ___ (*here insert number of plaintiff's damage instruction*), you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

3. All statutory references are to RSMo 1994, unless otherwise indicated.

On October 25, 1996, the case was submitted to the jury. The court instructed, *inter alia,* the jury that should they find in favor of the plaintiffs, they should award them "such sum as you believe will fairly and justly compensate said [appellant] for any damages you believe he sustained...." The court also instructed the jury that, if they believed the defendant's conduct was outrageous due to evil motive or reckless indifference to the rights of others, they had the option of finding the respondent liable for punitive damages.

On October 25, 1996, the jury returned its verdicts which found in favor of each plaintiff on the issue of liability for fraud. The jury assessed compensatory damages for each plaintiff, but found no liability for punitive damages as to any plaintiff. On January 14, 1997, the court entered judgment on the jury's verdicts. On February 11, 1997, the appellants filed a motion for a new trial, which was overruled on February 18, 1997.

This appeal follows.

### Standard of Review

■■■ In reviewing a trial court's denial of a motion for a new trial, we must indulge every reasonable inference favoring the trial court's ruling and not reverse that ruling absent a clear abuse of discretion. *Hacker v. Quinn Concrete Co., Inc.,* 857 S.W.2d 402, 415 (Mo.App.1993). A trial court is afforded broad discretion during *voir dire* inquiry as to allowing or prohibiting questions of the venire. *State ex rel. Missouri Highway and Transp. Com'n v. Buys,* 909 S.W.2d 735, 737 (Mo.App.1995). We will not reverse the trial court's rulings made during *voir dire,* " 'unless they clearly and manifestly indicate an abuse of such discretion.' " *Id.* (quoting *Barnes v. Marshall,* 467 S.W.2d 70, 76 (Mo. banc 1971)). "An abuse of discretion is found when a ruling clearly violates the logic of the circumstances or is arbitrary or unreasonable." *Rust v. Hammons,* 929 S.W.2d 834, 837 (Mo.App.1996) (citations omitted).

### I.

In their sole point, the appellants claim that the trial court erred in overruling their motion for a new trial because they were not allowed to fairly qualify the jury in that their trial counsel should have been permitted to ask the venire about their attitudes toward awarding punitive damages, but was prevented from doing so, which resulted in prejudice to them. We agree.

As to punitive damages, Mr. Manners attempted to ask the following question of the venire:

Okay. Let me ask you a little bit about the kind of damages, because it's something that we're going to talk about, and it kind of leads me to the next question I was going to ask anyway. It may very well be that during the course of the trial the judge instructs you that if you believe the conduct of TAD Technical Institute was outrageous and showed conscious disregard for the rights . . .

At this point, respondent's trial counsel, Mr. Burmeister, objected on the basis that, because the trial was to be bifurcated in accordance with § 510.263, it would be improper for Mr. Manners to address punitive damages with the venirepanel. The court agreed with Mr. Burmeister and sustained his objection. Following a bench conference, the trial court indicated that, although Mr. Manners could not make a specific inquiry as to any bias or prejudice by the venire against awarding punitive damages, he could inquire as to any bias or prejudice they might have as to the award of damages in excess of out-of-pocket expenses. Thus, we must decide whether, in prohibiting Mr. Manners from specifically inquiring as to bias or prejudice against the award of punitive damages, the trial court abused its discretion.

■■■ "Voir dire is intended to provide both parties the opportunity to participate in the selection of a fair and impartial jury." *State v. Seddens,* 878 S.W.2d 89, 92 (Mo.App. 1994). It is well settled that one of the fundamental purposes of *voir dire* is to "expose juror bias or prejudice which could form the basis of a challenge for cause or be useful in utilizing peremptory challenges." *State v. Lacy,* 851 S.W.2d 623, 629 (Mo.App.1993). "[Q]uestions on voir dire which are calculated to expose bias or prejudice should be liberally permitted...." *Id.* As such, inquiries at-

tempting to ascertain whether a potential juror possesses a bias or prejudice which would prevent him from following the law are proper during *voir dire*. *Id.* In this respect, questions on *voir dire* which attempt to ascertain bias or prejudice as to the award of punitive damages, if an issue in the case, are relevant and permissible inquiries. *Peth v. Heidbrier,* 789 S.W.2d 859, 863 (Mo.App. 1990). However, we have found no cases which address the issue of whether *voir dire* questions as to punitive damages are permissible where the trial is to be bifurcated pursuant to § 510.263, as in the case at bar. As such, this is a case of first impression.

■ Section 510.263 provides, in pertinent part, that cases involving punitive damages tried to a jury "shall be conducted in a bifurcated trial *before the same jury* if requested by a party." (Emphasis added.) Thus, although the trial is to be bifurcated, the parties are only presented with one opportunity to question potential jurors. Logically, where, as here, punitive damages are a relevant issue in the case, *voir dire* questions designed to ascertain bias or prejudice of potential jurors against the award of punitive damages are proper, even if the trial is bifurcated pursuant to § 510.263. To hold otherwise would prevent a party from exercising his right to ascertain any bias or prejudice of potential jurors against the award of punitive damages. In any event, the respondent now concedes on appeal that Mr. Manners had a right to ask the venire whether they held any bias or prejudice as to the award of punitive damages. However, while it concedes this fact, it claims that the trial court still did not err in prohibiting Mr. Manners from inquiring about punitive damages in that the manner in which he attempted to do so was improper in two respects: (1) the discussion of jury instructions, such as MAI 10.01 which instructs the jury under what circumstances they may award punitive damages, is inappropriate during *voir dire;* and, (2) attempts to obtain a commitment from the venire as to a specific verdict is inappropriate. In this regard, we would agree with the respondent to the extent that there is authority for the proposition that "[e]ven when the subject of a voir dire inquiry is appropriate, the manner in which the question is asked may taint the question rendering it improper." *Buys,* 909 S.W.2d at 738. Thus, we will discuss separately the respondent's contentions that the manner in which Mr. Manners inquired as to potential bias or prejudice against the award of punitive damages was improper.

■ The respondent's first contention, that discussion of jury instructions during *voir dire* is inappropriate, is without merit. It is well settled that, on *voir dire,* one may not declare to the venire what the law will be as given in the court's instructions to the jury. *Littell v. Bi–State Transit Development Agency,* 423 S.W.2d 34, 38 (Mo.App. 1967). However, we find no authority for the respondent's claim that there exists a blanket prohibition on discussing jury instructions, or using language from them, during *voir dire.* On the contrary, it is permissible to inquire of the venire as to whether they would follow an instruction if given by the court. *State v. Crawford,* 904 S.W.2d 402, 408 (Mo.App. 1995).

> The correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly....

*State v. Mosier,* 102 S.W.2d 620, 624 (Mo. banc 1937).

■ Although Mr. Manners was not allowed to finish his question, it is evident from the record, including the record of the bench conference with the trial court, that he was attempting to inquire of the venire, using language from MAI 10.01 [1990 Revision], as to whether they had any bias or prejudice against awarding punitive damages, if allowed by the court's instructions. In this respect, using the language of an approved MAI instruction to ask the venire whether they would be able to follow the law as instructed by the trial court was not only permissible, but was preferable, in order to accurately advise them as to the law so that they might give informed responses. *Seddens,* 878 S.W.2d at 92.

Here, from the record it is apparent that Mr. Manners was not attempting to declare to the venire what the law would be as given

in the court's instructions. Rather, he was attempting to ascertain whether the venirepersons would follow an instruction on punitive damages, *if* given by the court. This was a proper manner in which to probe the venire for bias or prejudice as to the award of punitive damages. *Mosier*, 102 S.W.2d at 624. As such, Mr. Manners should not have been prevented by the trial court from inquiring as to this matter simply because he was attempting to use language which tracked MAI 10.01.

■■■ The respondent's next contention as to the manner in which Mr. Manners was questioning the venire as to punitive damages, that his challenged inquiry was an attempt to obtain a commitment from the venire to a specific verdict, is not supported by the record. The respondent is correct that attempts to obtain a commitment from the venire to a specific verdict are prohibited. *State v. Antwine*, 743 S.W.2d 51, 59 (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). However, the record here reflects that Mr. Manners never asked for a commitment to return a verdict awarding punitive damages. Rather, he was simply attempting to ascertain whether the venire would follow an instruction on punitive damages, if given, which is a proper inquiry on *voir dire*. *State v. Richardson*, 923 S.W.2d 301, 309 (Mo.banc 1996). As such, we find the respondent's contention that Mr. Manners' challenged inquiry was an attempt to obtain a commitment from the venire to return a specific verdict, was also without merit.

The respondent next argues that even if the manner in which Mr. Manners attempted to ask his *voir dire* question concerning punitive damages was not improper, the trial court did not abuse its discretion in preventing him from asking it in that the appellants were not denied the right to ascertain jury bias or prejudice against punitive damages because Mr. Manners was allowed to ask a general question concerning bias or prejudice against the award of damages in excess of out-of-pocket expenses, which would include punitive damages. The respondent's argument assumes that the venire, as lay persons, knew that punitive damages are included in the category of damages in excess of out-of-pocket expenses. Logically, such an assumption cannot be fairly made. Furthermore, even assuming that the venire did generally understand that damages in excess of out-of-pocket expenses would include punitive damages, one cannot logically assume that they knew the exact nature of punitive damages. The only means by which the appellants could ascertain whether the venire held any bias or prejudice against the award of punitive damages was by specifically inquiring as to this issue. Thus, because Mr. Manners was denied an opportunity to question the venire specifically about punitive damages, we cannot be certain that the venire was free from bias or prejudice as to the award of punitive damages.

■■■ In summary, from the record, it is apparent that Mr. Manners was attempting to ask the venire a relevant question concerning any bias or prejudice they might hold as to the award of punitive damages. In doing so, he was not declaring to the venire what the law or instructions would be in the case, nor was he seeking from them a commitment to return a particular verdict. In addition, the general question which was allowed concerning out-of-pocket . expenses did not provide the appellants with a satisfactory opportunity to probe potential bias or prejudice which the venire may have held against the award of punitive damages. As such, we find the ruling of the trial court, in preventing Mr. Manners from inquiring of the venire as to punitive damages, clearly violated the logic of the circumstances and was arbitrary and unreasonable. *Rust*, 929 S.W.2d at 837. As such, the trial court abused its discretion. Nonetheless, not every trial error is reversible error mandating a new trial. There must also be a determination that the complaining party was prejudiced by the error. *Carothers v. Montgomery Ward and Co., Inc.*, 745 S.W.2d 170 (Mo.App.1987).

As to prejudice, the respondent argues that, even assuming the trial court did err in preventing Mr. Manners from inquiring as to the bias and prejudice of the venire against the award of punitive damages, such error was not prejudicial, and, therefore, was not reversible error, because the court struck for cause all venirepersons who indicated a re-

**508**

luctance to award damages in excess of out-of-pocket expenses. We find this claim to be without merit.

Simply dismissing all venirepersons who indicated a reluctance to award damages in excess of out-of-pocket expenses did not guarantee the jury was free from bias or prejudice as to the award of punitive damages. As stated, *supra,* an inquiry concerning bias or prejudice against the award of damages in excess of out-of-pocket expenses would not disclose whether a potential juror was biased or prejudiced against the award of punitive damages. Thus, the fact that all venirepersons who indicated a reluctance to award damages in excess of out-of-pocket expenses were struck for cause did not ensure the jury was free from bias or prejudice against the award of punitive damages.

 Finally, as to prejudice, it is undisputed that: (1) punitive damages were properly pled in the appellants' petition; (2) inquiries as to possible bias against punitive damages were relevant during *voir dire;* and, (3) and the jury was instructed by the trial court on the award of punitive damages. Notwithstanding the foregoing, and even though the jury found that the respondent purposefully defrauded each appellant and awarded them compensatory damages, it declined to award punitive damages. From this, it is reasonable to infer that some of the jurors may have been biased or prejudiced against the concept of punitive damages, and therefore, refused to award them even though required under the instructions of the court. As such, we find the appellants were prejudiced by the trial court's preventing Mr. Manners from inquiring of the venirepanel as to any bias or prejudice they may have had against awarding punitive damages.

### Conclusion

The circuit court's judgment denying the appellants' motion for a new trial is reversed and the cause is remanded for a new trial consistent with this opinion.

All concur.