Natalie ADKINS, et al., Appellants–
Respondents,

v.

Jill HONTZ, Respondent–Appellant.

Nos. WD 72549, WD 72550, WD 72571.

Missouri Court of Appeals,
Western District.

March 15, 2011.

ment was rendered after an actual trial on the issue of liability and damages.

Herbert W. McIntosh, Kansas City, MO, for appellants–respondents.

Kevin D. Weakley, Overland Park, KS, for respondent–appellant.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

The parties have cross appealed from a judgment of the Buchanan County Circuit Court on jury verdicts in favor of Natalie and Bryan Adkins individually in their suit for the wrongful death of their daughter, Malorie, and also in favor of the Estate of Malorie Adkins in a survival action. We affirm.

## Factual Background

This case arises out of the tragic death of Malorie Adkins ("Malorie") at age thirteen from a car accident in Kansas. On October 2, 2004, Jill Hontz ("Hontz") was driving four children, including Malorie Adkins, home from a volleyball tournament. Travelling on U.S. 36 highway at sixty miles per hour in clear weather conditions, Hontz took her eyes off the road and her vehicle's tires went off the pavement and onto the shoulder. Hontz pulled back onto the highway but over-corrected, crossed the center line, swerved back to her lane and lost control of the vehicle. Before her vehicle, a 1997 Ford Expedition, tipped, she told the children to "hold on." The vehicle rolled several times and came to rest in a ditch on the side of the highway.

All of the children were ejected from the vehicle and had varying degrees of injury. Malorie was thrown from the vehicle on its third or fourth roll. Emergency responders arrived shortly thereafter and found vomit coming out of Malorie's mouth as Hontz attempted to perform CPR on her on the shoulder of the highway. She was taken by ambulance to Hiawatha Community Hospital. Malorie's injuries included massive chest trauma, head trauma, a skull fracture, broken ribs, and laceration and bruising to her head and arms. She was pronounced dead at 2:20 p.m., approximately thirty-five minutes after the wreck.

Two lawsuits were filed as a result of this accident. First, Natalie and Bryan Adkins ("the plaintiffs"),[1] Malorie's parents, filed suit for wrongful death on August 25, 2005 in the Circuit Court of Buchanan County. Her parents also opened an estate in Kansas, where they were appointed Special Administrators by the Doniphan County District Probate Court. They subsequently commenced a survival action on behalf of the estate seeking damages for the injuries Malorie sustained prior to her death. This action was filed in the Circuit Court of Buchanan County on September 29, 2006, seeking actual and punitive damages.

The wrongful death and survival actions were consolidated. After a dismissal in July 2007 for *forum non conveniens,* and reversal by this Court,[2] the case was tried from January 4 to January 6, 2010.

Hontz admitted liability in negligence at trial, so the only issues to be decided by the jury pertained to damages. In Verdict A for the wrongful death of Malorie, the jury awarded her parents the following: $100,000 for past non-economic damages; $375,000 for future non-economic damages; $17,771.16 for past economic loss; and $0 for future economic loss. In Verdict B, the jury found Malorie experienced conscious pain and suffering prior to her death and awarded the Estate $50,000. On January 26, 2010, Judgment was en-

---

1. For ease of reference, we will refer to the Adkins and the Estate collectively as the "Plaintiff's."

2. *See Adkins v. Hontz,* 280 S.W.3d 672 (Mo. App. W.D.2009).

tered, from which the instant appeal is taken.[3]

Both parties now appeal. Further factual details will be outlined as relevant in the analysis section below.

## Analysis

### I. Plaintiff's Appeal

The Plaintiffs raise five points on appeal.

### A. Wrongful Death Case

 In Point One, the plaintiffs argue the trial court abused its discretion and deprived them of their right to a fair and impartial jury by preventing them from inquiring during voir dire whether any panel member had in mind a preconceived dollar figure as to damages that he or she would never exceed regardless of the evidence because that question was reasonably calculated to expose juror bias or prejudice and did not suggest any amount or ask any juror to commit to a specific amount of damages in advance of hearing the evidence.

> The essential purpose of voir dire is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges. It is designed to insure that the parties have fair and impartial individuals serving as jurors.

*Pollard v. Whitener*, 965 S.W.2d 281, 286 (Mo.App. W.D.1998) (internal citations omitted). "While a 'necessary component of a guarantee for an impartial jury is an adequate voir dire that identifies unqualified jurors[,] ... the trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of voir dire.'" *State v. Baumruk*, 280 S.W.3d 600, 614 (Mo. banc 2009) (quoting *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000)).

> Because rulings by the trial court are reviewed only for an abuse of discretion and "[a]n appellate court will find reversible error only where an abuse of discretion is found and the [challenger] can demonstrate prejudice," [the challenger] "has the burden of showing a 'real probability' that he was prejudiced by the [alleged] abuse."

*Id.* (quoting *Oates*, 12 S.W.3d at 311). The trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.

---

3. The parties at oral argument both agreed that the January 26, 2010 Judgment is the final Judgment in this case and is the Judgment which is being appealed. After trial motions were filed, including motions for a new trial and a motion asking the trial court to apply Kansas *statutory cap on non-economic damages* and a motion to apply a credit or offset for PIP payments previously paid by insurance carriers. The trial court dispensed with all after trial motions on May 24, 2010. Two days later, on May 26, 2010, the trial court then attempted to enter an Amended Judgment. The judgment is deemed final for purposes of appeal on the day all after trial motions are denied or are deemed denied. Rule 81.05(a)(2)(A)–(B); *see also State ex rel. Mo. Parks Ass'n v. Mo. Dep't of Nat. Res.*, 316 S.W.3d 375, 382 (Mo.App. W.D. 2010). When the judgment of the trial court is final, the trial court loses authority over the judgment. Rule 81.05(a)(2)(B). Therefore, the trial court's purported May 26, 2010 Amended Judgment is a nullity. *See Ex parte O'Brien*, 127 Mo. 477, 30 S.W. 158, 161 (1895) ("But if [the court] act without authority its judgments and orders are regarded as nullities."); *Peachtree Apartments v. Pallo*, 317 S.W.3d 189, 192–93 (Mo.App. E.D.2010). Accordingly, Hontz's point one on cross appeal arguing that the Amended Judgment is a nullity is granted.

*Pollard,* 965 S.W.2d at 286. However, voir dire is one of the highest duties of the courts in administering justice, to select a fair and impartial jury to hear each case. *Id.* In the case at bar, because Hontz stipulated to liability and the only question for the jury was the issue of appropriate damages, restrictions on the parties' ability to fully question the venire regarding their views on damages must be carefully scrutinized.

In voir dire, the plaintiffs were able to extensively inquire into the venire's beliefs with respect to monetary awards regarding the following: (1) personal beliefs that people should not sue; (2) religious beliefs that people should not sue; (3) beliefs against suing for money damages; (4) beliefs that no one should sue for wrongful death; (5) beliefs that they personally would not sue for wrongful death; (6) beliefs concerning the inability of money to bring the deceased back; (7) beliefs that Hontz had suffered enough or that sympathy would negate the need for damages; (8) beliefs that would prevent awards for future economic damages; (9) beliefs that would prevent an award for future non-economic damages.

After these lines of inquiry, the plaintiffs asked whether a venire member had in mind a figure "more than X amount of dollars" that he/she would not award to the plaintiffs. The trial court sustained an objection to the question. Then, the plaintiffs asked whether there was any venire member "who feels that no matter what the evidence is, [he or she] would not award a verdict in excess of $1 million?" An objection was again sustained. The plaintiffs placed in the record the question they wished to ask: "Do you have in your mind a set figure that, regardless of what

the evidence is, that you would never exceed that figure."

The proposed question that asked if the venire person had in mind any amount, in the abstract, above which they would not award the plaintiff no matter what the evidence revealed was proper and not objectionable. In *Wright v. Chicago, Burlington & Quincy Railroad Co.,* 392 S.W.2d 401, 408 (1965), the Supreme Court of Missouri held that counsel has "the right to ascertain from the jury panel any bias or prejudice by reason of the amount sued for which would render it impossible or difficult for them to render a fair and impartial verdict based upon the evidence and the instructions of the court," but counsel does not have the right to "to commit or pledge the jury to a certain verdict or amount thereof in advance of hearing all of the evidence." Here, the proposed question did not commit the jury to a specific verdict or amount of damages. In *Berra v. Danter,* the venire was asked the following analogous question: "I realize you haven't heard the evidence. Is there some amount you think, and I know you're hearing this in the abstract, is there some amount you think, boy, that just would be too large, I don't care what the evidence is?" 299 S.W.3d 690, 701 (Mo. App. E.D.2009). There was no objection at trial and, analyzing the issue under plain error, the Eastern District held that "there was no plain error in the question allowed by the court as it did not commit or pledge the jury to a certain verdict or amount of damages." *Id.* at 702. We agree that the information sought by the question in the case at bar was permissible and the court ought not to have sustained the objection.[4]

---

**4.** While the exact phraseology of the question may not have been perfect, the information

sought was appropriate.

■ "We will not reverse the trial court's rulings made during voir dire, unless they clearly and manifestly indicate an abuse of such discretion. An abuse of discretion is found when a ruling clearly violates the logic of the circumstances or is arbitrary or unreasonable." *Ashcroft v. TAD Res. Int'l*, 972 S.W.2d 502, 505 (Mo. App. W.D.1998) (citations and quotation marks omitted). In *Ashcroft*, counsel for the plaintiff was completely prohibited from asking any questions of the venire regarding the issue of punitive damages. In that case, we held that the failure of the trial court to allow the plaintiff a satisfactory opportunity to inquire as the potential bias or prejudice that the venire may have regarding punitive damages clearly violated the logic of the circumstances and was arbitrary and unreasonable, so as to rise to the level of an abuse of discretion. *Id.* at 507.

■ However, not every errant ruling constitutes reversible error. *Ashcroft*, 972 S.W.2d at 507. Even if a trial court abuses its discretion in a ruling regarding the scope of voir dire, the courts will not order a new trial unless the party can show that they were prejudiced by the error. *Id.* Under the circumstances in *Ashcroft* we held that:

> [E]ven though the jury found that the respondent purposefully defrauded each appellant and awarded them compensatory damages, it declined to award punitive damages. From this, it is reasonable to infer that some of the jurors may have been biased or prejudiced against the concept of punitive damages, and therefore, refused to award them even though required under the instructions

of the court. As such, we find the appellants were prejudiced by the trial court's preventing [plaintiff's counsel] from inquiring of the venirepanel as to any bias or prejudice they may have had against awarding punitive damages.

*Id.* at 508.

■ Although the trial court must be careful so as not to arbitrarily limit voir dire, we have recognized that the court may set limits on questioning so as to promote the "efficient administration of jury resources." *Pollard v. Whitener*, 965 S.W.2d 281, 288 (Mo.App. W.D.1998). In this matter, the trial court did not prohibit all questioning regarding damages or even all questioning regarding any category of damages. Considering the extensive questioning allowed by the trial court into the issue of damages, the categories of damages and the ability of the jury to follow the law in this regard, the plaintiffs have not shown, in the context of the entirety of questioning, that the trial court's exclusion of the question was an abuse of discretion for which there was a real probability of prejudice to the plaintiffs or that undermines confidence in the jury's verdict.

Point One is denied.

■ In Point Two, the plaintiffs argue the trial court abused its discretion in excluding the opinion testimony of plaintiffs' expert as to the value of services that Malorie would likely have provided to the plaintiffs for care giving to and care management of them in *their* senior years of life.[5] They argue the testimony was admissible in that it pertained to a subject beyond the common knowledge of the jury, the expert had specialized knowledge, she

---

5. Plaintiffs attempt to expand their argument in their reply brief arguing also that the exclusion of Zimmerman's testimony concerning the likelihood that Malorie would have been the most suitable and capable caregiver was improper. We decline to address this argument as it was improperly raised in the reply brief. *See Giles v. Riverside Transp., Inc.*, 266 S.W.3d 290, 298 (Mo.App. W.D.2008).

was qualified to give opinion testimony, and her opinions were supported by reliable facts and sound methodology.

The decision to admit or exclude expert testimony is within the sound discretion of the trial court. *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001). The trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Broussard*, 57 S.W.3d 902, 911 (Mo.App.2001). "If reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.*

*State v. Jones*, 322 S.W.3d 141, 144 (Mo. App. W.D.2010).[6] " 'The trial court does not usually commit reversible error by mere exclusion of expert testimony....' " *McGathey v. Davis*, 281 S.W.3d 312, 319 (Mo.App. W.D.2009) (quoting *Inman v. Bi–State Dev. Agency*, 849 S.W.2d 681, 683 (Mo.App. E.D.1993)). The complaining party must also show that trial court's abuse of discretion was prejudicial. *Inman*, 849 S.W.2d at 683 ("[T]he trial court did not abuse its discretion since plaintiffs do not show that their case was prejudiced by the exclusion of the question to their expert witness.")

The plaintiffs called Ina K. Zimmerman ("Zimmerman") as an expert witness in caregiving for the elderly, and no objection was made to her testimony until she was asked to provide a sum of economic damages related to services that could have been provided to the plaintiffs in their senior years by Malorie, had she survived. The court sustained the objection because it was not relevant, not a proper subject matter for expert testimony, and not lay testimony.

It is undisputed that Zimmerman is not an economist. She is an attorney who specializes in elder law, has served as a trustee of small estates of the elderly, and has acted as a court-appointed guardian of elderly persons. Zimmerman also founded and operated for twelve years a care management company called Daughters & Company that assisted elderly clients in "doing the duties that are beyond the ordinary activities of daily living." The plaintiffs attempted to elicit from the witness an opinion regarding likely projected care management expenses for the plaintiffs based upon certain factors (such as whether the elderly person is residing in his/her own home or in assisted living). An objection was made as to relevance which was sustained among other grounds.

 Zimmerman, not being an economist, was attempting to testify as to these future expenses based upon her experience running Daughters & Company. She testified that she was not into the financial end of the business and that she derived the figures by "averaging up" the costs of the "various people that they served." The court expressed concern

---

**6.** The plaintiffs have argued that the proper standard of review for the admission of expert testimony is *de novo* based upon their interpretation of the Supreme Court of Missouri's recent opinion in *Kivland v. Columbia Orthopaedic Group*, 331 S.W.3d 299 (Mo. banc 2011). We disagree. While *Kivland* does hold that the review of the admissibility of expert testimony is de novo, that standard applies to the determination of whether the testimony constitutes *expert* testimony and whether that *expert* testimony should be admitted into trial under Section 490.065. Other factors pertaining to how that evidence relates to the trial as a whole, such as whether the testimony is legally relevant or cumulative, are considerations applicable to lay and expert testimony alike and remain subject to review under an abuse of discretion standard.

that since there was no evidence of similarity between the clients Zimmerman served and the plaintiffs, then it was not relevant. Relevant evidence "tends to confirm or refute a fact in issue, or corroborate evidence that is relevant and pertains to the primary issue in the case." *State v. Freeman*, 212 S.W.3d 173, 176 (Mo.App. S.D. 2007).

Evidence must also be legally relevant to be admitted. [*State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992) (Thomas, J., concurring).] To determine legal relevance, the court must weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence. *Id.* The trial court must measure the usefulness of the evidence against its cost, and if the cost outweighs the usefulness, then the evidence is not legally relevant, and the court should exclude it. *Id.*

*Kroeger–Eberhart v. Eberhart*, 254 S.W.3d 38, 43 (Mo.App. E.D.2007). Based on the record before us, we cannot say that the trial court's determination that this evidence was not relevant was an abuse of discretion. Zimmerman was attempting to equate the expenses of her previous unidentified clients to the likely future expenses of the plaintiffs.[7] Zimmerman acknowledged that she had not met the plaintiffs before coming to court and had never met the plaintiffs' expert economist. In addition to having limited relevance, this evidence had the potential to confuse and mislead the jury by introducing figures into trial that had little or no bearing to the parties at hand. Plaintiffs did not meet their burden to establish that the figures that Zimmerman based her opinions on were of the type reasonably relied upon by experts in her field in forming their opinions and conclusions and did not establish that these figures were otherwise reasonably reliable. *See* section 490.065.

▆▆▆▆ Even if the exclusion of this evidence was an abuse of the trial court's discretion, we cannot find the exclusion was prejudicial. The exclusion of cumulative evidence is not considered prejudicial on appeal. *Nat'l Garment Co. v. City of Paris, Mo.*, 655 S.W.2d 515, 519 (Mo. banc 1983) (citing *Sampson v. Mo. Pac. R.R. Co.*, 560 S.W.2d 573, 590 (Mo. banc 1978) ("The exclusion of cumulative evidence is harmless and not reversible error.")) The plaintiffs also called an expert economist, Dr. Ward, who extensively testified as to the amount of future economic damages sustained by the plaintiffs. In particular, Dr. Ward testified to the loss of earnings available to her survivors had Malorie had some college education, if she had earned a college degree, and if she had a master's degree. Dr. Ward also testified as to the value of the loss of services, attention, filial care, and protection suffered by the plaintiffs because of Malorie's death. Dr. Ward's testimony extensively addressed the subject matter of Zimmerman's excluded testimony. Plaintiffs argue that the data on which Dr. Ward relied was national data, but the data that Zimmerman would have testified to was based on data

---

**7.** By the use of the word "unidentified" we do not mean to suggest that the individual patients would need to be identified in order to make this testimony admissible. Zimmerman's report was marked as Exhibit 26, which is not contained in the record on appeal, so we have no way of reviewing the basis for her opinions, other than the questions asked before the jury. We know that she had twenty employees of her business, but we have no information as to the number of clients they provided services to, the ages or types of needs or disabilities that these clients suffered, and other factual information to form the basis for the admission of this type of expert testimony.

from the Kansas City area and therefore more relevant. This supports Hontz's argument that the testimony was in fact cumulative. Therefore, the exclusion of Zimmerman's testimony was not prejudicial.

Point Two is denied.

■■■ In Point Three, the plaintiffs argue the trial court erred in granting Hontz's pre-judgment "Motion to Apply Offset or Credit" in the wrongful death case in its "Docket Entry and Order" on May 24, 2010, with respect to the personal injury protection (PIP) payments [8] made to or for Natalie and Bryan Adkins under Kansas law because the court lacked authority to grant that motion because it was filed under Rule 75.01 [9] and the court's docket entry and order was entered more than thirty days after entry of the judgment.

Because the parties and this Court all agree that the Amended Judgment is a nullity, see *supra* n. 3, this point on appeal is moot. Further, the defendants have not appealed the failure of the trial court in the January 26, 2010 Judgment to grant a credit and/or offset for PIP benefits. Accordingly, Point Three on appeal is denied.

■■■ In Point Four, the plaintiffs argue the trial court erred in granting Hontz's "Motion to Enter Judgment to Conform with K.S.A. § 60–1903 Cap on Non–Economic Damages," which applies a statutory cap of $250,000 on non-economic damages in plaintiffs' wrongful death case because that capping statute is unconstitutional as a violation of §§ 1, 2, 5, 18 and 20 of the Kansas Constitution's Bill of Rights. Although the court's granting of that specific

motion is moot on appeal, we will address the issue because the trial court actually applied the statutory cap in its January 26, 2010 Judgment.

There is no dispute that Kansas law governs the wrongful death and survival causes of action. Plaintiffs do not argue the merits of their contention before this court but ask us to take judicial notice of a pending case before the Kansas Supreme Court, which will presumably address the constitutionality of statutory caps on non-economic damages under the Kansas Bill of Rights. The case cited by the plaintiffs, *Miller v. Johnson*, No. 99, 818, has of this date not been decided by the Kansas Supreme Court.

Under the Constitution of the State of Kansas, the cap on non-economic damages has been explicitly held to be constitutional. *See McGinnes v. Wesley Med. Ctr.*, 43 Kan.App.2d 227, 224 P.3d 581, 591–92 (2010) ("[An intermediate appellate] court is duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position." The statutory caps on damages under K.S.A. 60–1903 and K.S.A. 60–1902 are constitutional.); *Samsel v. Wheeler Transport Servs., Inc.*, 246 Kan. 336, 789 P.2d 541 (1990) (determining damages caps under K.S.A. 60–19a02 are constitutional); *Leiker v. Gafford*, 245 Kan. 325, 778 P.2d 823 (1989) (determining damages caps under K.S.A. 60–1903 are constitutional). As we are bound to follow the current state of the law in the State of Kansas and cannot presume to know what the Kansas Supreme Court may or may not do in a future decision, we decline to find the trial court in error on this point.

---

8. PIP benefits are benefits paid, under Kansas law, by an insurance company to an insured for pecuniary losses such as funeral expenses and/or medical benefits under a motor vehicle liability policy. See K.S.A. 40–3103(q)

9. All rule citations are to Missouri Supreme Court Rules (2010), unless otherwise indicated.

Point Four is denied.

 In Point Five, the Estate argues the trial court erred in refusing to set aside its interlocutory grant of partial summary judgment against the Estate in the survival action on the issue of the submissibility of punitive damages.

 "On appeal, the submissibility of a punitive damages claim presents a question of law, which we review *de novo*. [*Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 24 (Mo.App. W.D.2006).] We view the evidence and inferences in a light most favorable to the plaintiff while disregarding all contrary evidence and inferences. *Id.*" *Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629, 637 (Mo.App. W.D.2006). "[A] case may not be submitted " 'unless each and every fact essential to liability is predicated upon legal and substantial evidence.' " *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995) (quoting *Houghton v. Atchison, Topeka & Santa Fe R.R. Co.*, 446 S.W.2d 406, 409 (Mo. banc 1969)). Punitive damages are a matter of substantive law. *See Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 70–71 (Mo.App. E.D.1999). Although the substantive law of the State of Kansas applies as it pertains to punitive damages, Missouri's law applies to matters of procedure. *See Peoples Bank v. Carter*, 132 S.W.3d 302, 304 (Mo.App. W.D.2004).

In Kansas, to recover punitive damages in a civil case, the plaintiff has the "burden of proving, by clear and convincing evidence [...] that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. § 60–3701. The Estate argues that Hontz's failure to require Malorie to wear a seatbelt constitutes wanton conduct sufficient to justify the submission of punitive damages to the jury.

 Kansas defines "wanton conduct" as "something more than ordinary negligence but less than a willful act. It must indicate a realization of the imminence of danger and a reckless disregard and indifference to the consequences." *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511, 518 (1986) (citing *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984)); *Willard v. City of Kansas City*, 235 Kan. 655, 681 P.2d 1067 (1984); *Britt v. Allen Cnty. Cmty. Jr. Coll.*, 230 Kan. 502, 638 P.2d 914 (1982); *Friesen v. Chicago, Rock Island & Pac. R.R.*, 215 Kan. 316, 524 P.2d 1141 (1974). Stated another way, "[w]antonness requires that there be a realization of *imminent danger* and reckless disregard, indifference, and unconcern for *probable consequences*." *Robison v. State*, 30 Kan. App.2d 476, 43 P.3d 821, 824 (2002) (citing *Friesen v. Chicago, Rock Island & Pac. R. R.*, 215 Kan. 316, 524 P.2d 1141 (1974) (emphasis added)). Imminent is defined as "Near at hand" and "on the point of happening." BLACK'S LAW DICTIONARY 676 (5th ed.1981). " 'Wantonness refers to the *mental attitude* of the wrongdoer rather than a particular act of negligence.' " *Adamson v. Bicknell*, 41 Kan.App.2d 958, 207 P.3d 265, 271 (2009) (quoting *Reeves v. Carlson*, 266 Kan. 310, 969 P.2d 252 (1998)) (emphasis added).

On this issue, the facts of this case are not disputed. Hontz admitted that she did not require Malorie to wear a seatbelt while in her vehicle. The facts are equally clear, however, that the wreck was indeed an accident. There were no allegations that the driver was intoxicated, talking on her cell phone, texting, deliberately driving dangerously, or driving recklessly. This is a case of negligence. As such, there is no evidence to support a finding that Hontz was aware of an *imminent* danger and recklessly disregarded the probable consequences of failing to require Malorie to wear a seatbelt. Plaintiffs have cited no

authority in Kansas, and this Court can find none, that would support a finding that the failure to require passengers, even children, to wear a seatbelt is a wanton act justifying the submission of punitive damages to the jury. This accident was not a recklessly disregarded imminent danger and, as such, Hontz did not recklessly or otherwise disregard the probable consequences of her actions. The trial court, therefore, did not err in refusing to submit to the jury the issue of punitive damages as there was no submissible case on the issue.

Point Five is denied.

## II. Cross–Appellant Hontz

Hontz's Point Two on Cross–Appeal argues that the trial court erred in awarding post-judgment interest in its Amended Judgment because it failed to apply the requisite statutory interest rate set forth in section 408.040, in that it applied a nine percent interest rate to the wrongful death judgment rather than the 5.25 percent interest rate required.

 Because the parties and the court all agree that the Amended Judgment is a nullity, see *supra* n. 3, this point on appeal is moot. However, we will point out that the plaintiffs wrongful death claim was filed prior to August 28, 2005, and, therefore, section 408.040, in effect at that time, mandated that all judgments bore an interest rate of nine percent. It was unnecessary to specify the interest rate in the judgment itself. Accordingly, the plaintiffs' wrongful death claim does in fact bear a post-judgment interest rate of nine percent. As to the survivor action, that case was filed under the current version of section 408.040. Although consolidated for trial, the causes of action retain separate identities, and consolidation does "not change the rights of the parties or make those who are parties in one, parties in the

other." *Osage Water Co. v. City of Osage Beach,* 58 S.W.3d 35, 42 (Mo.App. S.D. 2001) (citing *Bradley v. K & E Invs., Inc.,* 847 S.W.2d 915, 925 n. 1 (Mo.App. S.D. 1993)). Therefore the current section 408.040 is applicable. However, the point is moot because the totality of the judgment of fifty thousand dollars was satisfied by a credit in the original Judgment which brought the amount of the Judgment in favor of the Estate to zero dollars.

## Conclusion

For the foregoing reasons the judgment of the trial court is affirmed.

All concur.