

# Missouri Court of Appeals

## Southern District

### Division One

LEONA HEUBEL,                            )
                                         )
    Plaintiff-Appellant,             )
                                         )
v.                                       )    No. SD35492
                                         )
VSV, LLC and MARSHFIELD                  )    **Filed:  Jan. 15, 2019**
VETERINARIAN CLINIC, LLP,                )
                                         )
    Defendants-Respondents.          )

### APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Michael Hendrickson

### AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Leona Heubel ("Appellant") appeals the judgment, entered after a jury trial, that

awarded her money damages for personal injuries attributable to VSV, LLC and

Marshfield Veterinarian Clinic, LLP (collectively, "Respondents").  In two points relied

on, Appellant claims the trial court erred in:  (1) prohibiting her from asking the venire

panelists about whether they had ever made or defended claims for money damages; and

(2) assessing the cost of a prior mistrial against Appellant.[1]  Finding merit only in

---

[1] Appellant's brief enlarges that assertion to include similar costs assessed against Respondents.
Respondents suggest that "in the event this Court agrees with Appellant on this issue, Respondents

1

Appellant's second point, we affirm the judgment's damages award in favor of Appellant but reverse its attempt to assess against the parties the costs of an initial mistrial and final jury trial.

**The Evidence[2]**

Appellant visited Respondents' veterinary clinic to seek treatment for her dog. When Appellant arrived, holding the dog in her arms, one of Respondents' veterinarians (an "owner" of the clinic) opened the door for her. As Appellant stepped back to allow the door to be opened, she tripped and fell backward over a parking block located near the clinic's front door. The fall produced a broken hip and shoulder that required surgical repair.

This case first went to trial in October 2017. During direct examination of Appellant's first witness, the trial court sustained Respondents' request for a mistrial based upon Appellant's elicitation of testimony that ran afoul of the court's previous ruling on a motion *in limine*.

The case was tried again in January 2018, this time to conclusion. Prior to trial, Appellant filed her "[Appellant]'s Proposed Claims/Lit[i]gation Questions" pursuant to Rule 69.025.[3] The proposed questions included:

  i. There are two separate categories that we are interested in-one is claims, the other is lawsuits:

     1. A claim is basically someone who has been injured or wronged seeking money and making a claim for that money and either claims gets resolved or

respectfully request that the $883.85 assessed against each Respondent similarly be stricken from the Judgment on remand."

[2] We recite the evidence relevant to Appellant's claims and the inferences therefrom in the light most favorable to the jury's verdict. *Adkins v. Hontz*, 337 S.W.3d 711, 722 (Mo. App. W.D. 2011).

[3] All Rule references are to Missouri Court Rules (2018). Rule 69.025(a) provides, "A party seeking to inquire as to the litigation history of potential jurors shall make a record of the proposed initial questions before voir dire. Failure to follow this procedure shall result in waiver of the right to inquire as to litigation history."

the person does not proceed and a lawsuit is never filed. Lawsuits are claims that do not get resolved and require and [sic] actual lawsuit to be filed seeking money damages fir [sic] injury or some wrongdoing. An example might be, somebody hits your car and you seek damages for the repair cost.

2. With that brief explanation, have any of you or members of your close family filed claims for money damages?

3. Have you or any of your close family, or for those of you who may own a business, had claims filed against you, your family, or your business?

4. Have any of you filed a lawsuit for money damages on behalf of yourself or had a close family member do so or owned a business that filed a lawsuit?

5. Have any of you or members of your close family or business that you own or operate had a lawsuit filed against you, them or it?

In a hearing outside the presence of the jury, the trial court expressed a belief that Rule 69.025 and subsequent case law contemplated questions about litigation history and not "claims history[.]" The trial court was also concerned that the proposed claims history questions were "way too close to [the jurors] thinking about and talking about insurance claims that they had sought, or that someone sought against them or their carrier." Based on this concern, the trial court limited Appellant to the following two questions touching upon this issue:

"Have any of you filed a lawsuit for money damages on behalf of yourself or own a business that filed a lawsuit?"

"[H]ave any of you, or business that you own, had a lawsuit filed against you or it?"

At the conclusion of the trial, the jury returned a verdict in Appellant's favor and calculated her damages at $100,000. Regarding comparative fault, it apportioned 15% to VSV, LLC; 15% to Marshfield Veterinarian Clinic, LLP; and 70% to Appellant. The resulting judgment awarded Appellant damages in

3

accordance with the jury's verdict, 50% of various specified court costs, then concluded with the following paragraph:

> **OREDERED** [sic]**, DECREED, AND ADJUDGED** [that Appellant] remit to the Clerk of the Court $1,270.20 as and for the cost of a mistrial and that [Respondents] each remit to the Clerk of the Court the cost of the trial resulting in this judgment in the amount of $883.85."

This appeal timely followed the entry of the judgment.

**Analysis**

*Point 1*

Point 1 claims the trial court abused its discretion and deprived Appellant of her right to a fair and impartial jury by "prohibiting Appellant from inquiring of the venire panel whether or not any member of the venire panel ever made a claim or had a claim made against him or her."

"The essential purpose of voir dire is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges." ***Pollard v. Whitener***, 965 S.W.2d 281, 286 (Mo. App. W.D. 1998). "While a 'necessary component of a guarantee for an impartial jury is an adequate *voir dire* that identifies unqualified jurors[,] . . . the trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire*.'" ***State v. Baumruk***, 280 S.W.3d 600, 614 (Mo. banc 2009) (quoting ***State v. Oates***, 12 S.W.3d 307, 310 (Mo. banc 2000)).

"No fixed and inflexible rule may be laid down which may determine the extent to which counsel may go in the examination of jurors upon voir dire." ***State v. Crockett***,

4

419 S.W.2d 22, 26 (Mo. 1967). "We will not reverse the trial court's rulings made during voir dire, unless they clearly and manifestly indicate an abuse of such discretion. An abuse of discretion is found when a ruling clearly violates the logic of the circumstances or is arbitrary or unreasonable." *Adkins*, 337 S.W.3d at 718 (quoting *Ashcroft v. TAD Res. Int'l*, 972 S.W.2d 502, 505 (Mo. App. W.D. 1998)).

Appellant argues that, in prohibiting her from asking about prior claims, the trial court "substantially restricted" her ability to identify biased or prejudiced jurors, strike jurors for cause, and "intelligently manage" her peremptory strikes. In support of that argument, Appellant cites cases in which parties have questioned the panel about prior claims; she does not cite any authority for the proposition that Appellant had an absolute right to ask about prior claims. *See, e.g., McMillin v. Union Elec. Co.*, 820 S.W.2d 352, 354 (Mo. App. W.D. 1991) (plaintiff inquired whether any panel member had ever filed a worker's compensation claim); *Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820, 840 (Mo. App. E.D. 2005) (plaintiff inquired whether anyone had been a party to a lawsuit and when he received no responses narrowed the question to personal injury claims). "Absent any requirement in Missouri law of voir dire questions on possible [claims] bias in this type of a case, we must look to the general rule governing voir dire examination. Such examination is largely a subject for the trial court's control in the exercise of its discretion." *Marshall v. Brown*, 608 S.W.2d 105, 107-08 (Mo. App. E.D. 1980) (holding that defendant did not have a right to question the panel whether any of them would be prejudiced against him because he was black).

Appellant has not cited a case (and our own research has failed to reveal one) that stands for the proposition that the refusal to allow *voir dire* questions about prior claims

history constitutes reversible error. Nonetheless, we question the propriety of prohibiting such questions, and we do not read Rule 69.025(a) as supporting such a ban. Counsel's proposed questions about prior claims were a legitimate means of attempting to uncover bias amongst the panel against persons seeking money damages. However, assuming, without deciding, that the trial court erred in prohibiting the inquiry, not every errant ruling constitutes reversible error. *Ashcroft*, 972 S.W.2d at 507; ***Blunkall v. Heavy & Specialized Haulers, Inc.***, 398 S.W.3d 534, 550 (Mo. App. S.D. 2013).

Even if a trial court abuses its discretion in a ruling regarding the scope of *voir dire*, appellate courts will not order a new trial unless the party can show that they were prejudiced by the error. *Adkins*, 337 S.W.3d at 718. In *Adkins*, the Western District concluded that "[t]he proposed question that asked if the venire person had in mind any amount, in the abstract, above which they would not award the plaintiff no matter what the evidence revealed was proper and not objectionable." *Id.* at 717. However, *Adkins* concluded that the plaintiffs were not prejudiced when the trial court prohibited them from asking the permissible question because the plaintiffs had already extensively inquired into the venire's beliefs with respect to monetary awards. *Id.* at 717-18.

Here, as in *Adkins*, the trial court did not prohibit all questioning regarding potential or actual bias against persons seeking money damages. In response to questions about whether anyone had sued or been sued for money damages, Appellant received responses from six venirepersons. One panelist indicated that she had filed a lawsuit for personal injuries she sustained at a radio station, another as a result of a car wreck, and two others had experienced litigation connected with their jobs. Another panelist admitted that his prior experience would probably influence his ability to be fair in the

6

case. Another expressed views of the case that she conceded were assumptions based on evidence she had not yet heard. In follow-up questioning, Appellant also was able to ask a panelist, "Now this is -- now you fell and you had a claim?" In sum, a review of the *voir dire* record reveals that Appellant had an adequate opportunity to ask questions that might – and did – reveal bias or prejudice towards people asserting claims for money damages.

Ultimately, any potential support for a claim of prejudicial error evaporated when the jury returned a verdict in favor of Appellant on her claim for money damages. In **Blunkall**, this court held that the trial court's refusal to allow plaintiff to ask whether jurors could return a verdict in excess of $1 million was held to be "clearly harmless error" when the jury returned a plaintiff's verdict totaling $1.75 million. 398 S.W.3d at 550 n.23. A similar conclusion is appropriate here.

Finally, we note that Appellant could have elicited evidence of potential bias against persons making a claim for money damages by asking different questions. For example, Appellant could have asked whether any members of the panel had heard, seen, or read anything about the "lawsuit crisis[,]" or whether anyone believed there were too many frivolous personal injury lawsuits producing excessive awards. *See **Keltner v. K-Mart Corp.***, 42 S.W.3d 716, 718 (Mo. App. E.D. 2001).

We cannot say that Appellant has "shown, in the context of the entirety of questioning, that the trial court's exclusion of the question[s she was not permitted to ask] was an abuse of discretion for which there was a real probability of prejudice" to Appellant. **Adkins**, 337 S.W.3d at 718; *see also **Blunkall***, 398 S.W.3d at 550. Point 1 is denied.

7

Point 2 claims the trial court

"erred in assessing $1,270.20 for "the cost of a mistrial" against Appellant because "the cost of a mistrial" is not a cost that the [t]rial [c]ourt had authority to assess in that the [t]rial [c]ourt only had authority to assess against Appellant those costs authorized by statute or rule whereas the [sic] "the cost of a mistrial" is not a cost authorized by statute or rule and, therefore, could not be assessed against Appellant."

We agree.

The award of court costs is a purely statutory creation, and "[s]tatutes allowing the taxation of costs are strictly construed." **Gene Kauffman Scholarship Found., Inc. v. Payne**, 183 S.W.3d 620, 627 (Mo. App. W.D. 2006). In other words, courts have "no inherent power to award costs, which can only be granted by virtue of express statutory authority." **State ex rel. Merrell v. Carter**, 518 S.W.3d 798, 800 (Mo. banc 2017) (quoting **Payne**, 183 S.W.3d at 627).

The judgment entered by the trial court in this case ordered Appellant to "remit to the Clerk of the Court $1,270.20 as and for the cost of a mistrial[.]" The judgment also ordered Respondents to "each remit to the Clerk of the Court the cost of the trial resulting in this judgment in the amount of $883.85."

The trial court did not cite – nor do we find – any authority, statutory or otherwise, for requiring all parties to "remit to the Clerk of the Court" the costs associated with the two jury trials involved in this case. The existing case law regarding non-statutory attempts by courts to collect money to offset the expense of conducting jury trials is favorable to Appellant's point. In **Meadowbrook Country Club v. Davis**, 421 S.W.2d 769 (Mo. banc 1967), our high court considered the validity of a St. Louis

8

County Circuit Court rule that required any party who desired a jury trial of an appeal from a municipal court decision to, amongst other things, deposit $15 with the circuit clerk. *Id.* at 770-71. The failure to do so resulted in a waiver of trial by jury. *Id.* at 771. While the Court in that case did not "consider the requirement of a deposit separately from the other requirements of the Rule[,]" it found that "[t]he requirements, in toto," impermissibly enlarged the modes of jury waiver prescribed by statute and Supreme Court rule, thereby contravening both. *Id.* at 773-74.

In *Parrett v. Integon Life Ins. Co.*, 590 S.W.2d 411 (Mo. banc 1979), the Court cited its opinion in *Meadowbrook Country Club* as support for its decision that a local court rule that required a litigant to deposit $100 with the circuit clerk or else waive her right to a jury trial was contrary to the existing statutes and Supreme Court rules. *Parrett*, 590 S.W.2d at 413-14 (recognizing that jury costs can create a financial burden on counties but noting that the problem cannot be corrected by local court rule inconsistent with state rules and statutes). The court of appeals, in *Dorn-Chrysler Plymouth, Inc. v. Roderique*, 487 S.W.2d 48 (Mo. App. St.L.D. 1972), noted that other than jury fees – which have now been repealed – there was "no other statutory authority for taxing jury costs against an unsuccessful party." *Id.* at 49.

It is well-settled in Missouri that a trial court may not "make and enforce a rule that would deprive a party of the right given him by law, or granting that right upon terms more onerous than those fixed by law." *Wade v. Wade*, 395 S.W.2d 515, 518 (Mo. App. St.L.D. 1965). By requiring the parties to bear the cost, respectively, of a mistrial and the trial resulting in a verdict for Appellant, the trial court impermissibly imposed the costs of those jury trials upon the litigants without the requisite legal authority to do so. *See*

9

***Dorn-Chrysler Plymouth, Inc.***, 487 S.W.2d at 49 (holding it improper to tax costs against the defendant for jurors' fees and mileage).  *See also **Merrell***, 518 S.W.3d at 799.

Point 2 is granted.  The portion of the judgment ordering the parties to pay, respectively, the costs of the mistrial and the final jury trial is reversed.  The cause is remanded for the trial court to enter a judgment that omits the following portion of its existing judgment:

> **OREDERED** [sic]**, DECREED, AND ADJUDGED** [that Appellant] remit to the Clerk of the Court $1,270.20 as and for the cost of a mistrial and that [Respondents] each remit to the Clerk of the Court the cost of the trial resulting in this judgment in the amount of $883.85."

In all other respects, the judgment is affirmed.


DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS