**STATE ex rel. BNSF RAILWAY COMPANY, Relator,**

v.

**The Honorable Mark H. NEILL, Respondent.**

**No. SC 91706.**

Supreme Court of Missouri, En Banc.

Dec. 20, 2011.

Rehearing Denied Jan. 31, 2012.

William A. Brasher, Thomas P. McDermott and Cynthia A. Masterson, Boyle Brasher LLC, St. Louis, for Railway.

Leonard P. Cervantes, Phillip A. Cervantes and Jennifer L. Suttmoeller, Cervantes & Associates, St. Louis, for Michael Patton.

LAURA DENVIR STITH, Judge.

The Burlington Northern and Santa Fe Railway Company ("BNSF") petitions this Court to issue its writ of mandamus ordering the trial court to lift its protective order preventing discovery of the medical records of Dr. Shankararao Rao, a psychiatrist who treated and prescribed medication to the plaintiff in the underlying personal injury lawsuit, and directing the trial court to order that the records be produced and that Dr. Rao's records custodian be made available for deposition.

This Court holds that the trial court abused its discretion in holding that discovery of the records of a treating psychiatrist is precluded entirely where, as here, the plaintiff alleges only physical rather than psychological injury. Rule 56.01 provides that discovery may be had of matters reasonably calculated to lead to the discovery of admissible evidence on all issues, not just on damages. This Court reaffirms that psychiatric records are not discoverable in the usual case in which the plaintiff does not claim psychiatric injury. But here, BNSF's defense is that the cause of the plaintiff's physical injuries was his use, abuse and abrupt cessation of use of medications prescribed by Dr. Rao and other psychiatrists around the time of the injuries. On these facts, BNSF has shown that it has reason to believe that discovery of treatment records held by Dr. Rao reasonably is calculated to lead to the

discovery of admissible evidence on its theory of causation.

The concerns the trial court states in its order that such discovery must be denied entirely because it could be used to introduce psychiatric testimony by "the back door" can be addressed adequately by entry of an appropriate protective order such as, *inter alia*, requiring *en camera* review of Dr. Rao's records for relevancy or limiting their use to the issue of causation or such other issue, if any, as to which the trial court finds they are relevant and admissible.

For these reasons, this Court makes permanent its preliminary writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Michael Patton filed a two-count personal injury action under the Federal Employers' Liability Act ("FELA"), *45 U.S.C. § 51 et seq.*, against his employer, BNSF. In count I, Mr. Patton alleges that, in August 2001, BNSF negligently required him to perform heavy manual labor in extreme heat and, as a result, he lost consciousness and fell, striking his head, neck and left shoulder. Mr. Patton further alleges that striking his head caused him to suffer subsequent "reoccurring seizures and/or fainting spells."

In count II, Mr. Patton alleges that, in October 2002, BNSF negligently failed to provide a reasonably safe workplace when it permitted several BNSF employees, while acting within the scope of their employment, to fill Mr. Patton's vehicle with garbage as a prank. Mr. Patton asserts that when he discovered his vehicle filled with trash, he became so agitated that he lost consciousness and fell to the ground. Mr. Patton claims that this fall re-injured his head and neck, lacerated his eye, and "caused [him] to suffer reoccurring seizures and/or fainting spells."

BNSF disputes that its negligence caused Mr. Patton's losses of consciousness or seizures and any resulting injuries. Instead, BNSF argues, Mr. Patton's reoccurring losses of consciousness, seizures and related problems resulted from his abuse of, or withdrawal from, prescription medications. BNSF supports this theory with information contained in Mr. Patton's medical records, obtained through the discovery process in this and an unrelated prior case in which Mr. Patton alleged, among other things, that he had developed seizures caused by lead exposure. Those records show that, shortly before the first BNSF incident in August 2001, a psychiatrist named Dr. Stephen Stromsdorfer and another physician named Dr. Harry Katz, unbeknownst to one another, both were prescribing various controlled substances to Mr. Patton, including Valium and Xanax. When they learned of each other's prescriptions in July 2001 Dr. Katz abruptly ceased writing prescriptions for Mr. Patton. At the same time, Dr. Stromsdorfer was reducing Mr. Patton's medications. BNSF argues that this sudden decrease in medications set the stage for Mr. Patton's loss of consciousness in August 2001 as at least one of the drugs suddenly available to him only in lesser quantities has anticonvulsive properties.

To further bolster its defense that Mr. Patton's injuries were caused by prescription drug abuse rather than excessive heat or other unsafe conditions, in February 2011 BNSF sought discovery of records held by Dr. Rao. Through an earlier discovery request, BNSF learned that, after Drs. Stromsdorfer and Katz either lowered their prescriptions to Mr. Patton or altogether ceased making them, Mr. Patton had made dozens of visits to emergency rooms seeking greater quantities of those

medications. Later, Dr. Rao began treating Mr. Patton for depression and anxiety, and his prescription records show he was prescribing medicine to him for these conditions before, during and after the October 2002 incident in which Mr. Patton again lost consciousness.

BNSF contends that Dr. Rao's records are reasonably calculated to lead to the discovery of admissible evidence relevant to the "nature and cause of [Mr. Patton's] condition and the cause of his fainting and/or seizures." Accordingly, BNSF subpoenaed from Dr. Rao's office "any and all medical records, reports, & other medical documents & billing ... which relate to treatment rendered to Michael T. Patton."

In response, Mr. Patton filed a motion to quash the subpoena and requested a protective order for records held by Dr. Rao. In denying the discovery and granting Mr. Patton's requested protective order, the trial court explained that the request to review Dr. Rao's records for evidence relevant to causation "strikes the court as an attempt to obtain through the back door psychiatric records that Defendant was denied at the front door." It therefore barred the discovery altogether, stating that the railroad "has already obtained all of [Mr. Patton's] medical records related to the injuries alleged in the petition, which are physical, not psychiatric. [Mr. Patton's] psychiatric records held by Dr. Rao are not relevant to those injuries and are not discoverable."

In April 2011, BNSF petitioned this Court to issue a writ of mandamus: (1) ordering the trial court to deny Mr. Patton's motion for protective order; (2) permitting BNSF to depose the custodian of records for Dr. Rao; and (3) ordering Mr. Patton to produce the records of Dr. Rao. On May 31, 2011, this Court issued a preliminary writ. That writ is now made permanent.

## II. STANDARD OF REVIEW

 This Court has the authority to "issue and determine original remedial writs." *Mo. Const. art. V, § 4.1.* "A litigant [seeking] relief by mandamus must allege and prove that he has a clear, unequivocal specific right to a thing claimed." *Furlong Cos., Inc. v. City of Kansas City,* 189 S.W.3d 157, 166 (Mo. banc 2006). "Trial courts have broad discretion in administering rules of discovery, which this Court will not disturb absent an abuse of discretion." *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner,* 239 S.W.3d 608, 610 (Mo. banc 2007). Mandamus is proper, however, when a court abuses its discretion in denying "discovery because a trial court has no discretion to deny discovery of matters [that] are relevant to [a] lawsuit and are reasonably calculated to lead to the discovery of admissible evidence when the matters are neither work product nor privileged." *State ex rel. Rowland v. O'Toole,* 884 S.W.2d 100, 102 (Mo.App.1994).

## III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO CONSIDER THE RELEVANCE OF THE REQUESTED MATERIAL TO THE ISSUE OF CAUSATION

 Missouri's discovery rules allow parties to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." *Rule 56.01(b)(1).* "It is not grounds for objection that the information may be inadmissible at trial, but it is sufficient if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *State ex rel. Plank v.*

*Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992); *see also Rule 56.01(b)(1)*.

■ As noted, Mr. Patton filed his claim pursuant to the FELA. To sustain a claim under the FELA, a plaintiff must prove that: "(1) he was injured in the scope of his employment; (2) his employment was in furtherance of [the railroad's] business; (3) [the railroad] was negligent; and (4) [the railroad's] negligence played some part in *causing* his injury." *Palmer v. Union Pac. R.R. Co.*, 311 S.W.3d 843, 851 (Mo.App.2010) (emphasis added). In other words, Mr. Patton is required to prove not just damages, but also that BNSF's negligence caused his injuries.

*A. The Trial Court Mistakenly Focused Solely on the Damages Claimed*

BNSF sought discovery of records held by Dr. Rao about his treatment of Mr. Patton. In response, Mr. Patton sought a protective order alleging that psychiatric records are not relevant because he claims only physical injuries. After granting the protective order, the court noted, in ruling on BNSF's motion for a rehearing, that the issues had become limited to whether psychiatric records can be discovered when only physical injuries are alleged, stating, "[w]hat Defendant seeks now is Dr. Rao's psychiatric records of Plaintiff, and *in particular the medical history provided to Dr. Rao as part of the new patient process.'*" (emphasis added). Despite this narrowing of the requested materials, the trial court denied discovery. It specifically stated that it did so based on its belief that psychiatric records could

not be relevant to a claim solely for physical injuries. Similarly, the trial court's order denying rehearing on its refusal to permit this discovery specifically stated that discovery was being denied because Mr. Patton's "mental and psychological condition is not relevant to the damages sought by Plaintiff. *That is the position consistently taken by this Court throughout discovery.*" (emphasis added).[1] The trial court made the basis for its ruling even more explicit later in its order, stating "Defendant has already obtained all of [Mr. Patton's] medical records related to the injuries alleged in the petition, which are physical, not psychiatric. [Mr. Patton's] psychiatric records held by Dr. Rao are not relevant to those injuries and are not discoverable."

■ The trial court is correct that, when a plaintiff has not alleged psychological injury beyond "garden variety" emotional distress, psychiatric records are not subject to discovery in connection with the issue of damages. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567–68 (Mo. banc 2006). ("[E]vidence of [a plaintiff's] medically or psychologically diagnosable mental or physical condition is irrelevant to the question of whether she suffered 'garden variety' emotional distress ....") This is because, in such cases, a plaintiff's "particular past or present mental condition ... is not in controversy." *Id.* at 568. Likewise, a plaintiff does not place his or her psychological condition in controversy merely by alleging physical damage. *Id.*[2]

---

1. Similar language appears in other orders issued by the court. For instance, in granting Mr. Patton's motion for a protective order, the court "reiterate[d] that Plaintiff's mental/psychological condition is not relevant to the damages claimed by Plaintiff." To the extent that the dissenting opinions are based on the belief that this Court cannot know why the trial court ruled as it did, or on the belief

that it so ruled simply because the requested discovery was too broad, they are in error.

2. Accordingly, to the extent that BNSF sought "any and all medical records, reports, & other medical documents & billing ... which relate to treatment rendered to Michael T. Patton," the initial discovery request was too broad. But, as noted, through litigation of

But, the discoverability of medical records does not turn solely on the type of doctor who holds the records. The fact that Mr. Patton does not claim to have suffered psychological injury does not mean that records held by Dr. Rao may not be relevant to some other issue. The pertinent inquiry is whether the requested material "appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 56.01(b)(1).* If so, and assuming the information is not privileged, the material is discoverable, regardless of who has possession of it. *Id.*

B. BNSF Argues that the Requested Records are Relevant to Causation

While the medical records BNSF seeks from Dr. Rao may not be relevant to Mr. Patton's physical injuries, BNSF claims they are relevant to the issue of causation. As noted, Mr. Patton alleges that the injuries he sustained as a result of the 2001 incident, including his recurring losses of consciousness or seizures, were caused by a fall that occurred because BNSF negligently required him to work in hazardous temperatures.

Similarly, he claims that the injuries he sustained in 2002—when he lost consciousness after discovering that his co-workers had filled his vehicle with garbage—were caused by BNSF's negligent failure to provide a reasonably safe workplace.

By contrast, BNSF asserts that it was Mr. Patton's abuse of, or withdrawal from, prescription medications that caused his unconsciousness or seizures and resulting injuries. It has Dr. Rao's prescription records but seeks discovery of Mr. Patton's treatment records because it believes they are reasonably calculated to lead to the discovery of admissible evidence about the nature and extent of Mr. Patton's prescription drug use, whether he was experiencing withdrawal symptoms at or near the time of the 2002 incident, and the effect of any potential preexisting conditions.

In support of this argument, it notes that Dr. Rao was treating Mr. Patton before, during and after the 2002 incident. BNSF's experts believe that the medications prescribed to Mr. Patton by the doctors treating him at the time of the first incident caused or contributed to that incident and that the medications Dr. Rao prescribed to him before, during and after the second incident also were related to his injuries. In particular, one expert for the defense, Dr. Patrick Hogan, testified in his deposition that "the reduction of [Mr. Patton's] Valium and Xanax medication probably contributed to the seizure that he had" in August 2001 and "possibly" contributed to the 2002 seizure. Another defense expert, Dr. Bernard Randolph, stated in his deposition that Mr. Patton's regular use of various controlled substances prior to August 2001 was likely "a contributing factor to the development of the syncope and the associated seizure." BNSF notes that even plaintiff's own expert, Dr. Stromsdorfer, testified that, prior to the first incident in 2001, Mr. Patton was taking substantial quantities of prescription drugs, that taking those medications in excess can result in seizures and paralysis, and that withdrawal from those drugs "is a well-known cause for seizures." He also stated that "Mr. Patton had been repeatedly informed of the risk of seizures if he suddenly stopped his dosage." To the extent records held by Dr. Rao may shed light on this issue, it is apparent that BNSF should be entitled to access them.

the motion for protective order, the court limited the issue, stating "[w]hat Defendant seeks now is Dr. Rao's psychiatric records of Plaintiff, and *in particular the medical history* *provided to Dr. Rao as part of the new patient process.*" It found such discovery irrelevant because Dr. Rao is a psychiatrist and Mr. Patton claimed only physical injuries.

Of course, a claim that otherwise undiscoverable records "might" lead to the discovery of admissible evidence would not justify a fishing expedition into those records, nor can it be used as part of an attempt to evade the limitation on discovery of psychiatric records of plaintiffs who do not claim psychological injury. *See Dean*, 182 S.W.3d 561 at 568. Trial courts must continue to make case-by-case determinations as to whether the material requested through discovery "appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 56.01(b)(1)*. Here, however, the trial court abused its discretion in prohibiting such discovery in its entirety simply on the basis that no record of a psychiatrist could be relevant or discoverable in the absence of a claim of psychiatric injury. While that might often be the case, it was not so here. BNSF did not just seek to engage in a fishing expedition in otherwise privileged records in the hope that they might contain relevant information—such attempts to evade the bar on discovery of psychiatric records remain wholly impermissible under *Dean*, 182 S.W.3d at 567–68. But here, BNSF has met its burden of showing that it has reason to believe that discovery of these records is reasonably calculated to lead to the discovery of admissible evidence as to the issue of causation.

While, as Mr. Patton notes and the trial court feared, discovery of these or other psychiatric records could be misused to try to embarrass Mr. Patton or to try to influence the jury to decide against his claim for reasons unrelated to its merit, such dangers of misuse do not provide a basis to deny such discovery entirely. They can be protected against by the trial court exercising its discretion to issue an appropriate protective order, whether that be by an order making discovery dependent on the trial court's finding, after *en camera* review, that the records do indeed contain information reasonably calculated to lead to the discovery of admissible evidence on (as alleged here) causation; or by an order limiting use or admissibility of any records found relevant; or by an order that certain matters be held confidential; or by another appropriate order. *See State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 602 (Mo. banc 1968) ("Nothing we say herein deprives the trial court of its authority to issue protective orders under Rule [56.01(c)], upon proper showing, limiting the production of [medical] records to those which reasonably relate to the injuries and aggravations claimed by the plaintiffs in the present suit.").[3]

## IV. CONCLUSION

For the reasons set forth above, this Court holds that the trial court abused its discretion in limiting its consideration of the relevance of BNSF's discovery request to the issue of damages. In so holding, it should be emphasized that this Court has not seen and makes no determination as to the admissibility of the evidence BNSF seeks to discover, nor does it address the issues raised by the dissenting opinions as to whether the discovery may be inappropriate or limited on other grounds, such as

---

**3.** The dissenting opinion of Judge Rahmeyer suggests that the trial court may have denied discovery of Dr. Rao's records due to allegations that BNSF has engaged in abusive discovery techniques and that the denial must be judged in light of what the trial court may have believed were unreasonable demands for other discovery. If the trial court believes that a protective order is appropriate to protect Mr. Patton against abusive discovery, it appropriately may enter such an order. Here, however, the basis of the entry of the order was the court's stated belief that records held by a psychiatrist could not be relevant to this case in which physical injury is alleged. That is the only issue before this Court on this appeal, and it provides the basis of the Court's decision.

the breadth of the discovery order. The trial court has not yet ruled on that issue, nor have the parties had an opportunity to reframe their discovery requests and responses in light of this opinion.

This Court simply holds that the trial court should not have rejected the discovery entirely because it was sought from a psychiatrist. The requested materials still may be relevant to the physical injuries Mr. Patton claims. The trial court instead should have considered and should consider now (if appropriate through *en camera* review) whether discovery of some or all of Dr. Rao's records of his treatment of Mr. Patton is reasonably calculated to lead to the discovery of admissible evidence on causation or other material issues and, so, should be discoverable by BNSF subject to an appropriate limiting order designed to prevent their misuse. This Court leaves it to the trial court's discretion, following consideration of Dr. Rao's records, whether it would be appropriate to grant the other discovery BNSF seeks. This Court's preliminary writ is made permanent.

RUSSELL, BRECKENRIDGE and PRICE, JJ., concur; FISCHER, J., dissents in separate opinion filed; RAHMEYER, Sp.J., dissents in separate opinion filed; TEITELMAN, C.J., concurs in opinions of FISCHER, J., and RAHMEYER, Sp.J. DRAPER, J., not participating.

ZEL M. FISCHER, Judge.

For good reasons, these two principles of law are well settled:

First, "[a] litigant [seeking] relief by [writ of] mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." *Furlong Cos., Inc. v. City of Kansas City,* 189 S.W.3d 157, 166 (Mo. banc 2006).

Second, the trial court has broad discretion in controlling and managing discovery, and this Court should interfere with that exercise of discretion only when it deems the trial court to have abused its discretion to the point that a decision "is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602, 607 (Mo. banc 2002).

The principal opinion attributes a very limited motive to the trial court for denial of the discovery request. The other dissenting opinion attributes not only the stated reasons on the record by the trial court for its denial of the discovery request, but other additional legitimate bases the trial court may have had for the denial of the discovery request.

I do not limit nor impart motivation on the trial court, but based on my legal education, experience, and the voluminous record in this case recognize the good reasons why this Court commits to the discretion of the trial court the supervision over the discovery process and why this Court should only grant extraordinary writs in extraordinary situations.

I can conceive of a proper, limited discovery request that would be reasonably calculated to lead to the discovery of admissible evidence related to the defense theory of causation in this case. But the trial court's ruling on the request pending before it at the time it made its ruling, which is what this Court must consider, does not constitute an abuse of discretion and certainly does not indicate a lack of careful consideration. Therefore, I would not grant nor make permanent the writ of mandamus and do dissent.

NANCY STEFFEN RAHMEYER, Judge.

I respectfully dissent. The majority opinion grants a writ of mandamus on a discovery matter based on one reason the trial court gave in the grant of its protective order. That reason was that BNSF had "already obtained all of [Mr. Patton]'s medical records related to the injuries alleged in the petition, which are physical, not psychiatric. [Mr. Patton's] psychiatric records held by Dr. Rao are not relevant to those injuries and are not discoverable." A reviewing court affirms the decision of the trial court on any basis that is correct, even if the reviewing court might have ruled on a different basis. *Kubley v. Brooks,* 141 S.W.3d 21, 27 n. 5 (Mo. banc 2004); *Fix v. Fix,* 847 S.W.2d 762, 766 (Mo. banc 1993); *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318 (Mo. banc 1964). I believe, as is admitted in the majority opinion, that the discovery request was too broad. An overly broad request alone would have been a valid basis for denying this writ of mandamus. *See State ex rel. Jones v. Syler,* 936 S.W.2d 805, 808 (Mo. banc 1997) (holding a writ was appropriate when the authorization was not limited as to time and not limited to specific healthcare providers). BNSF did not request medical records, reports and other medical documents limited in time; therefore, denial of the discovery request would have been proper.

Furthermore, a brief review of the docket entries indicates extensive discovery. Approximately 130 notices to take depositions have been filed in this case. The trial court ruled on BNSF's summary judgment motion. The trial court ruled on at least 10 motions to compel discovery, numerous objections to interrogatories,

and at least 10 other motions for sanctions, protective orders or to obtain authorizations before the court. In the trial court's September 22, 2009 order regarding one BNSF motion to compel, the trial court noted that BNSF "seeks to compel [Mr. Patton] to provide 66 additional records authorizations beyond those already provided." In fact, on the present issue alone, the trial court noted in its February 25, 2011 order, "The parties have previously presented this Court with discovery disputes in this area [Dr. Rao's medical records] at least twice." BNSF sought reconsideration of the order a third time, which was addressed on March 16, 2011.[1] The parties do not dispute that BNSF already has acquired all of Mr. Patron's prescription records, including those held by Dr. Rao. BNSF's allegation that perhaps there may be something relevant in the patient history of Dr. Rao may have rung hollow with the trial court.

Clearly, the trial judge was no stranger to the alleged facts in this case. The trial court may have granted the protective order on the basis that there appeared to be an abuse of the discovery process. As a further reason, the court could have granted the protective order as a sanction for obtaining records that Mr. Patton alleges were unauthorized. Mr. Patton alleges that BNSF abused the discovery process on a prior occasion by supplying Dr. Stromsdorfer's medical records to Dr. Hogan before the trial court issued a proper medical authorization. In justifying its action, BNSF produced a 10–year–old medical authorization by Dr. Stromsdorfer's office from a prior lead exposure litigation that released the records to a law firm uninvolved in the present litigation. Dr.

1. The order addressed in the majority opinion was this order denying BNSF's motion to

reconsider the grant of the protective order.

Stromsdorfer provided an affidavit asserting that his office "has never released a copy of Michael Patton's medical records to [counsel for BNSF in the present litigation] pursuant to an authorization" and that BNSF attempted to conduct ex parte communications with Dr. Stromsdorfer regarding Mr. Patton's medical records.

As noted by this Court,

> Missouri's litigators are reminded that "[t]he discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants." *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. banc 1999). The discovery process was not designed to be an endless and unduly expensive ordeal. The rules of discovery are intended to allow pretrial discovery to be conducted as promptly and inexpensively as possible. Missouri litigators should act accordingly.

*State ex rel. Ford Motor Co. v. Westbrooke*, 151 S.W.3d 364, 369 (Mo. banc 2004).

Finally, the trial court, in its February 25, 2011 order, reminded the parties of Local Rule 32.7, which states, "Parties seeking medical records *shall* use the standard medical authorization approved by the Court." (emphasis added). The rule further provides, "No objections to the standard medical authorization will be entertained by the Court." Local Rule 32.7. A review of the requested authorizations indicates that the proper filing form was

not followed.[2] Certainly, another valid reason to grant the motion to quash and protective order arises if the court based its decision on BNSF's failure to follow the rules set forth for discovery in that circuit.

It is well settled that a trial court has broad discretion in controlling and managing discovery, and this Court should interfere with that exercise of discretion only when it deems the trial court to have abused its discretion to the point that a decision "is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). In light of the fact that Dr. Rao did not treat Mr. Patton until after the initial injury, the tenuous allegation by BNSF in an overbroad interrogatory that there might be something in the patient history that was relevant to the issue of causation, and the already extensive discovery, I would find that the trial court's decision was not arbitrary or unreasonable, nor did it indicate a lack of careful consideration. I would find no abuse of discretion in the grant of the protective order and would deny the writ.

---

**2.** Dr. Rao's medical authorization was not included in the legal file. The medical authorization from Dr. Stromsdorfer clearly fails to follow Local Rule 32.7, which, paired with the trial court's admonishing, creates the reasonable inference that proper form was not followed.