Cheryl WESTERMAN, Respondent,

v.

Barbara SHOGREN, Appellant.

No. WD 74066.

Missouri Court of Appeals,
Western District.

June 19, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Oct. 30, 2012.

Brett A. Emison and Jessica M. Agnelly, Lexington, MO, for respondent.

Kevin Weakley and Carol Kistulek, Overland Park, KS, for appellant.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and KENNETH GARRETT, Special Judge.

CYNTHIA L. MARTIN, Judge.

Barbara Shogren ("Defendant") appeals from the trial court's judgment awarding $200,000 to Cheryl Westerman ("Plaintiff"). Defendant claims that the trial court erred in: (1) denying her motion for a new trial on the basis that the jury's verdict awarded damages for a future, speculative surgery; (2) allowing an expert witness to testify about his personal neck condition; and (3) issuing a protective order that limited the scope of discovery about Plaintiff's medical issues. We affirm.

### Factual and Procedural History

Plaintiff filed a negligence claim against Defendant for injuries sustained during a car accident on September 12, 2008. Plaintiff's petition alleged that Defendant attempted to make an improper left turn in front of Plaintiff's vehicle, and Defendant's vehicle struck the front of Plaintiff's vehicle. Plaintiff's damage allegation was as follows:

> As a direct and proximate result of the aforesaid negligence of Defendant Shogren, Plaintiff Cheryl Westerman sustained severe and permanent injuries to her mind and body, including but not limited to her knees, head, neck, and shoulders, and as a result has suffered impaired mobility, mental anguish, scarring, pain, disfigurement, disability, trauma and emotional and mental distress. All of Plaintiff's injuries are permanent, progressive and disabling in nature. Plaintiff has in the past and will in the future incur large and substantial expenses for doctors, physicians, hospitals, pharmaceuticals, therapy, counseling, medical equipment, nursing, implements, surgery, rehabilitation, medical procedures, assistance, and other medical care and treatment. Plaintiff has in the past and will in the future suffer loss of earnings and income and has sustained a diminished ability and capacity to earn income and provide assistance around her household. Plaintiff has sustained a loss of ability to enjoy life, lost opportunities and loss of enjoyment of life. Plaintiff has sustained pain and suffering as a result of the negligence, faults, and omissions of Defendant Shogren.

Defendant filed an answer, and the case proceeded to discovery.

As a part of her discovery requests, Defendant propounded interrogatories, one of which asked Plaintiff for information regarding any injuries requiring medical treatment that she suffered in the last ten years. Plaintiff objected to the interrogatory and, subject to that objection, answered the interrogatory based on the

prior five years. In her answer to the interrogatory as modified, Plaintiff reported that, in May 2005, she suffered a strained back, though she could not recall how. Defendant did not contest the objection to the interrogatory or seek to compel an additional response.[1]

Defendant also propounded requests for production of documents. Among the documents sought was a signed copy of a medical records release. The release as drafted would have authorized "all [medical] records" without limitations as to time or areas of the body. Plaintiff objected, arguing that the authorization was "overly broad, unduly burdensome, vague and ambiguous." Subject to that objection, Plaintiff executed a modified medical records release limited to personal health information that related to the Plaintiff's "head, neck, shoulders, upper extremities and knees" dating back to September 12, 2008, the day of the accident. Once again, Defendant did not contest the objection to the medical records release or the limits Plaintiff imposed on the release.

Defendant notified Plaintiff that she would be deposing Dr. Bradley Zink ("Dr. Zink"), Plaintiff's treating physician. Dr. Zink had been Plaintiff's treating physician since 1996. The deposition notice requested that Dr. Zink bring the following to his deposition: (1) "All records that Dr. Zink has in regard to [Plaintiff] and/or this case"; and (2) "All medical records pertaining to [Plaintiff], including but not limited to files, documents, reports, tests, radiographs and notations."

Prior to Dr. Zink's deposition, Plaintiff filed a motion for a protective order pursuant to Rule 56.01(c). Plaintiff's motion argued that her medical and treatment

history before January 1, 2005, should be protected from discovery because it was not reasonably calculated to lead to the discovery of relevant, admissible evidence. Plaintiff also claimed that requiring her to provide extensive medical and treatment history before the accident constituted an invasion of her privacy. Defendant objected to the motion for a protective order, arguing that access to Plaintiff's medical and treatment history could reveal the cause of the May 2005 back strain Plaintiff disclosed in her interrogatory responses. In addition, Defendant claimed that Plaintiff's broad description of her damages and injuries in her petition opened the door to discovery on Plaintiff's entire medical and treatment history.

After a motion hearing, the trial court entered the following protective order ("Protective Order"):

1. All records in the custody of Dr. Zink regarding injury or illness to Plaintiff's back are discoverable, regardless of the date of the injury or illness.

2. All other records in the custody of Dr. Zink prior to the year 2005 are protected and not discoverable by Defendant.

3. Defendant is not permitted to question Dr. Zink on any injuries or illnesses that Plaintiff may have suffered prior to the year 2005, except any injury or illness to Plaintiff's back.

The trial court's protective order applied only to Dr. Zink's deposition and not to any other discovery efforts undertaken by the Defendant.

Plaintiff's case proceeded to trial before a jury. Dr. Garth Russell ("Dr. Russell"), an orthopedic surgeon, testified. Plaintiff

---

1. Rule 57.01(e) provides that "[t]he party submitting the interrogatory may move for an order under Rule 61.01(b) with respect to any objection to ... an interrogatory." Rule 61.01(b) allows the trial court, upon motion and reasonable notice, to order a party to answer an interrogatory upon penalty of an order striking the pleadings.

retained Dr. Russell to evaluate the injuries she sustained to her neck, upper back, and knees as a result of the accident. Dr. Russell testified that he agreed with Plaintiff's treating physicians that her injuries were a result of the car accident and not the result of pre-existing degenerative changes. Dr. Russell testified that Plaintiff had three progressively invasive options for treating and managing her neck pain in the future: (1) take anti-inflammatory medications or narcotics, (2) undergo epidural steroid injections, or (3) undergo spinal surgery. Dr. Russell testified that, based on Plaintiff's stated symptoms and level of pain and according to a reasonable degree of medical certainty, surgery was appropriate. However, Dr. Russell also testified that Plaintiff was attempting to manage the pain in order to avoid surgery. Dr. Russell opined that there was a 45 percent chance that Plaintiff would have to have neck surgery. Defendant did not object to Dr. Russell's opinion regarding Plaintiff's need for future neck surgery.

Dr. Russell also discussed degenerative changes, an alternative source for Plaintiff's neck pain that had been raised by Defendant. Dr. Russell observed that degenerative changes exist in the neck of "[e]verybody who's, say, over 45 years of age." However, Dr. Russell testified that degenerative changes do not necessarily cause pain. By way of example, Dr. Russell testified that he suffered degenerative changes in his own neck but did not have chronic pain. Defendant objected to this testimony as irrelevant, arguing Dr. Russell's degenerative neck issues were not a fair comparison to Plaintiff's, as Dr. Russell was twenty years older than Plaintiff. Defendant's counsel also argued that the testimony constituted unfair surprise because Plaintiff had not indicated prior to trial that Dr. Russell would testify about his own degenerative neck issues. The trial court overruled the objections.

The jury entered a verdict in favor of Plaintiff and assessed damages at $200,000. Pursuant to Rule 78.01, Defendant filed a motion for a new trial, arguing: (1) that the jury improperly awarded damages for speculative future neck surgery so that the verdict was against the weight of the evidence; (2) that the trial court erred in allowing Dr. Russell to testify regarding his own degenerative neck condition because it bolstered Plaintiff's testimony, invading the province of the jury; and (3) that the trial court improperly restricted discovery to Plaintiff's prior neck and knee injuries. In support of the first argued basis for a new trial, Defendant submitted the affidavits of two jurors. Each affidavit stated, "[w]e, the jury awarded damages for Plaintiff's future medical needs, based on the likelihood that she would require neck surgery sometime in the future." The trial court denied the motion for a new trial.

Defendant appeals.

## Denial of Defendant's Motion for a New Trial

■ Defendant's first point relied on argues that the trial court erred in denying her motion for a new trial "because the jury's verdict was not supported by the evidence in that the jury awarded damages for speculative future neck surgery where the only evidence was that Plaintiff had a only [sic] 45 percent chance of needing neck surgery."

> "We review the trial court's denial of a motion for new trial for abuse of discretion. We will reverse the trial court's decision only where we find a substantial glaring injustice. An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it

shocks one's sense of justice and indicates a lack of careful consideration." *Kline v. City of Kansas City*, 334 S.W.3d 632, 638 (Mo.App. W.D.2011) (quoting *Gallagher v. DaimlerChrysler Corp.*, 238 S.W.3d 157, 162 (Mo.App. E.D.2007)).

Defendant's point relied on is subject to two constructions: (1) Dr. Russell's testimony about a 45 percent chance of future neck surgery was speculative and, therefore, inadmissible; or (2) Dr. Russell's testimony about a 45 percent chance of future neck surgery was insufficient evidence to submit the issue to the jury because the evidence could not support an award of damages for future surgery. Either construction yields the same result because Defendant failed to preserve either argument for appellate review. "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a).

Here, Defendant made no objection to Dr. Russell's testimony that there was a 45 percent chance that Plaintiff would need neck surgery in the future. In order to give the trial court the opportunity to consider an evidentiary challenge, an objection must be made at the earliest opportunity. *McGinnis v. Northland Ready Mix, Inc.*, 344 S.W.3d 804, 815 (Mo.App. W.D.2011). That "afford[s] the trial court the opportunity to invoke remedial measures or take corrective action to resolve error rather than relegating appellate courts to determine whether prejudice resulted." *Id.* As such, any argument that Dr. Russell's testimony was speculative, and therefore inadmissible, was not properly preserved for appellate review. In fact, during oral argument, Defendant admitted that evidence about the prospect for future medical care, including future surgeries, is admissible. *See Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 129 (Mo. banc 2007) (holding that "an injury that carries the risk of complications is more significant than one that does not include this risk and ... expert testimony [is] properly admitted to assist the jury in determining the nature and extent of ... injuries"). This includes evidence not only of the possible need for future surgery, but also its cost. *Id.* at 131–32.

■ Similarly, Defendant did not object before submission of the case to the jury that Dr. Russell's testimony was insufficient to support an award of damages for future neck surgery. The damage instruction submitted in this case generally directed the jury to award Plaintiff the sum it believed would "fairly and justly compensate [Plaintiff] for any damages you believed [Plaintiff] sustained and *is reasonably certain to sustain in the future.*" (Emphasis added.) As instructed, the jury was permitted to consider Dr. Russell's testimony about the possibility of future neck surgery as it determined Plaintiff's damages. The damage instruction was presumably based on M.A.I. 4.01, which provides that: "If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained *[and is reasonably certain to sustain in the future]* as a direct result of the occurrence mentioned in the evidence." (Emphasis added.) The Notes on Use for the emphasized bracketed phrase provide that the phrase "may be added if supported by the evidence."

Here, the record is devoid of evidence that Defendant objected to any of the jury instructions, let alone the inclusion of language in the damage instruction permitting consideration of future damages. An objection must be lodged against an allegedly erroneous instruction at the earliest opportunity to preserve the error for ap-

peal. *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 754–55 (Mo.App. W.D.2011). "No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 70.03. Without an objection, to the instruction, Defendant has preserved no claim of error for appellate review with respect to submission of the possibility of future neck surgery as an element of Plaintiff's damage.

If Defendant did not object to all of Plaintiff's future damage evidence, but only to the sufficiency of the evidence relating to the need for future neck surgery, then Defendant should have requested and tendered a withdrawal instruction during the jury instruction conference asking for withdrawal from the jury's consideration of the future surgery evidence. MAI 34.01 addresses withdrawal and limiting instructions and notes, in pertinent part:

> B. The court may properly give a withdrawal instruction when it has received evidence upon an issue which is later abandoned either by choice or by reason of inadequate proof for final submission to the jury. The instruction to be given is that the issue is no longer open for the jury's consideration.
> C. Evidence, rather than an entire issue, may also properly be withdrawn by instruction.

Defendant did not tender a withdrawal instruction. Defendant cannot now complain that the evidence about the need for future neck surgery which the damage instruction permitted the jury to consider was insufficient to permit an award of damages for future neck surgery.

In any case, Missouri law clearly permits a jury to consider evidence that future surgery might be needed. In *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 447 (Mo. banc 1998), our Supreme Court concluded that a medical expert's testimony "within a reasonable degree of medical certainty" that a plaintiff might require a future surgery was properly submitted to the jury. The Court held that "[t]he record indicates the expert's testimony in this case is no more speculative than that in other cases where surgery is possible in the future but has not yet been recommended to the patient." *Id.* Defendant conceded during oral argument that *Emery* correctly states the law. We fail to see any distinction between Defendant's point relied on and the principles announced in *Swartz* and *Emery* with respect to both the admissibility and submissibility of evidence of the potential but uncertain prospect of future surgery.

■ Finally, we observe that even had Defendant properly preserved a claim of error relating to the admission/submission of evidence of the need for future surgery, Defendant has not negated the possibility that the jury's award of $200,000 in damages was supported by evidence of future damages other than the need for future surgery. Other evidence in the record, including a life plan suggesting damages in excess of $270,000, Plaintiff's need for continued progressive care, and future pain and suffering, were sufficient, independent of Dr. Russell's testimony about future surgery, to support the jury's damage award.

■ Defendant did present two affidavits from jurors in connection with the motion for new trial which attested that the jury's verdict "awarded damages for Plaintiff's future medical needs, based on the likelihood that she would require neck surgery sometime in the future." After a jury is discharged, "the court can receive evidence (including affidavits from jurors)

to explain ... and uphold [a verdict], although not to contradict it or destroy it." *Walton Constr. Co. v. MGM Masonry, Inc.*, 199 S.W.3d 799, 805 (Mo.App. W.D. 2006). The Defendant's only purpose for offering the two juror affidavits was to attempt to defeat the jury's verdict. " 'No one is competent to impeach a verdict by the making of an affidavit as to matters inherent in the verdict, such as that the juror did not understand the law as contained in the court's instructions. . . .' " *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 439 (Mo. banc 1984) (quoting *Baumle v. Smith*, 420 S.W.2d 341, 348 (Mo.1967)). At best, the affidavits tendered by the Defendant, in light of this precedent, afford us with nothing more than an assurance that this jury followed the damage instruction which permitted the jury to award Plaintiff fair compensation for her future damages as supported by the evidence.

Defendant's first point is denied.

### Overruling Objection to Dr. Russell's Testimony About His Neck Condition

█ Defendant's second argument on appeal is that the trial court erred in overruling her objection to Dr. Russell's testimony about his own neck condition. Defendant claims that allowing this testimony bolstered the credibility of Plaintiff and invaded the province of the jury to determine the veracity of a witness.

"The trial court has broad discretion to admit or exclude evidence, and we will affirm the trial court's decision absent a clear abuse of discretion." *Owens v. ContiGroup Cos., Inc.*, 344 S.W.3d 717, 726 (Mo.App. W.D.2011) (internal quotation marks omitted). The trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Adkins v. Hontz*, 337 S.W.3d 711, 719 (Mo.App. W.D.2011). " 'If reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' " *Id.* (quoting *State v. Jones*, 322 S.W.3d 141, 144 (Mo. App. W.D.2010)).

Defendant complains that Dr. Russell was allowed to testify, over objection "that he experiences the same type of pain in his own neck, based on a condition he has that is the same or similar to that of [Plaintiff], and, therefore, he was allowed to opine that because his neck hurts that [Plaintiff's] pain complaints must be genuine." (Defendant's Brief, pp. 16–17). Defendant complains *on appeal* that this testimony improperly bolstered Plaintiff's testimony and constituted an improper comment on Plaintiff's veracity that she was experiencing pain. We disagree.

█ When Dr. Russell testified about the degenerative changes in his own neck, Defendant objected on the basis of relevance, that the testimony would be more prejudicial than probative, about a lack of notice, and that the testimony was an unfair comparison given the age difference between Dr. Russell and Plaintiff. These objections were overruled. The trial court's ruling on these objections has not been raised as a claim of error on appeal. Instead, Defendant now claims that Dr. Russell's testimony exceeded the scope of proper expert testimony because it invaded the province of the jury by commenting on Plaintiff's veracity. This objection was not raised with the trial court, and has not been preserved for appellate review. "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a).

Even if properly preserved, Defendant's newly raised objection lacks merit, as Defendant has completely misstated the scope and extent of Dr. Russell's testimony. At trial, Defendant argued that Plaintiff's neck pain was not a result of an injury suffered in the accident but was instead a result of degenerative changes. Defendant did not argue that Plaintiff was not experiencing pain but rather that the cause of her pain was not Defendant's responsibility.

Dr. Russell, an orthopedic surgeon, gave an explanation of degenerative changes:

Well, degenerative changes is [sic] getting older. I mean, we all have them. It starts about age 25. Our body builds and it is young, and [at] about 25 we peak physically. And from then on, it's wear. It just occurs depending upon whether you're an iron worker or a banker as to how much wear you get. And also there is a genetic quality to it. But the more you use it, the more smooth cartilage surface of the joint will wear. And that is the facet joints. And they are the little joints that you see behind, that where you bend or you twist from side to side, they slide over each other. But everybody has it. Everybody who's, say, over 45 years of age will have some degenerative changes within the neck. But it doesn't hurt.

After explaining that routine degenerative changes do not cause pain, Dr. Russell testified, by way of example, about the degenerative changes in his own neck:

Q: Dr. Russell, do you yourself have degenerative issues or changes in your neck?

. . . .

Well, I have very severe [degenerative changes]. I didn't realize it. About three months ago I was having some discomfort and I had a little cyst up here. And they X-rayed my neck to see if they were going to take the cyst out. My goodness, my neck has severe degenerative changes. As I said, I used to have trouble operating, looking down all day. But I have very severe degenerative changes.

. . . .

Q: Dr. Russell, again, with your severe degenerative changes that you described, how does that affect your activity level or neck pain or day-to-day, any chronic pain?

No, I don't have any chronic pain. And if I use my neck a lot it gets a little stiff but I go get a massage.

Ultimately, Dr. Russell opined, on the basis of the work he had done in the case and his experience, that *degenerative changes were not the cause of Plaintiff's neck injury and chronic pain.* Dr. Russell *never* commented on the veracity of Plaintiff's testimony regarding the fact that she was experiencing chronic neck pain. Instead, Dr. Russell offered a medical opinion about the causation for that pain. Thus, the premise of Defendant's point relied on, that Dr. Russell testified "that he experiences the same type of pain in his own neck, based on a condition he has that is the same or similar to that of [Plaintiff]," and that "because his neck hurts that [Plaintiff's] pain complaints must be genuine," is a fallacy.

■ In any case, we find that Dr. Russell did not improperly testify about the cause of Plaintiff's neck pain by negating the proposition that degenerative changes cause neck pain, or by supporting this general medical opinion with an example drawn from his personal experience. "[I]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education may testify thereto in the form of an opinion or otherwise." Section 490.065.1.[2] To offer an opinion, " 'the expert's competence on the subject matter must be superior to that of the ordinary juror, and the opinion must aid the jury in deciding an issue in the case.' " *Duerbusch v. Karas*, 267 S.W.3d 700, 710 (Mo.App. E.D.2008) (quoting *Vittengl v. Fox*, 967 S.W.2d 269, 279 (Mo.App. W.D. 1998)). Dr. Russell's testimony about causation for Plaintiff's neck pain met these requirements.

In the argument portion of her brief, Defendant also challenges Dr. Russell's testimony as "not legally relevant because it unfairly prejudiced [Defendant], confused the issues, and misled the jury." (Defendant's Brief, p. 18). This claim of error is not included within Defendant's point relied on and thus preserves nothing for appellate review. "The argument [portion of the appellant's brief] shall be limited to those errors included in the 'Points Relied On.' " Rule 84.04(e); *see Burg v. Dampier*, 346 S.W.3d 343, 354 (Mo.App. W.D.2011).

■■ Even if preserved for our review, the argument that Dr. Russell's testimony was not legally relevant is without merit. " 'To be admissible, evidence must be logically and legally relevant.' " *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 281(Mo.App. W.D.2011) (quoting *Claus v. Intrigue Hotels, LLC*, 328 S.W.3d 777, 786 (Mo.App. W.D.2010)). Logical relevance refers to the tendency of evidence " 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.* (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002)). Legal relevance, on the other hand, " 'is a determination of the balance between the probative and prejudicial effect of the evidence.' " *Id.* (quoting *Claus*, 328 S.W.3d at 787). That balancing requires the trial court to " 'weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence.' " *Adkins v. Hontz*, 337 S.W.3d 711, 720 (Mo.App. W.D. 2011) (quoting *Kroeger–Eberhart v. Eberhart*, 254 S.W.3d 38, 43 (Mo.App. E.D. 2007)). If the cost outweighs the usefulness, the evidence is not legally relevant and should be excluded. *Id.*

■■ Defendant does not dispute that Dr. Russell's testimony was logically relevant. Defendant thus concedes that Dr. Russell's testimony tended to make the determination that Plaintiff's neck pain was caused by the accident more probable than not. Defendant only complains that Dr. Russell's testimony regarding his degenerative neck condition was not legally relevant because there was no evidence of similarity between Plaintiff and Dr. Russell given their twenty-year age difference. Defendant thus argues that the probative value of the testimony was outweighed by its prejudicial effect because the jury was misled and confused.

Plaintiff's neck pain was one of the questions before the jury. During opening statement, Defendant's attorney stated:

Now, I will also tell you that the MRI that [Plaintiff] had taken here locally that she gave to Dr. Wilkinson did indicate the presence of **multi-level degenerative disc and facet disease** and some other things, and that that was ultimately the radiologist's report. That MRI was seen by Dr. Russell and I

---

2. All statutory references are to RSMo 2000 as supplemented unless otherwise noted.

believe he will talk to you about that. So I won't go into any great detail. (Emphasis added.) As noted, *supra*, Dr. Russell's brief testimony about his own neck condition simply served to explain, in the form of an example, his general medical opinion that routine degenerative changes do not cause chronic pain, and his ultimate causation opinion that Plaintiff's chronic neck pain was not a result of degenerative changes in her neck. Dr. Russell simply noted that in his case, despite evidence of severe degenerative changes in X-rays, he did not experience chronic neck pain. Defendant does not explain why the age difference between Dr. Russell and Plaintiff converted otherwise logically relevant testimony that degenerative changes do not routinely cause chronic pain into testimony that confused or misled the jury.

Defendant's second point is denied.

### Protective Order Limiting Discovery of Plaintiff's Medical History

■ Defendant's third point on appeal claims that the trial court erred in entering the Protective Order that permitted discovery of all medical records related to Plaintiff's back, unlimited as to time but prohibited discovery of all other medical records prior to 2005. Defendant contends that Plaintiff's broad allegations of her injuries in the petition opened the door for discovery of all of her medical records.

Defendant's characterization of the Protective Order in her point relied on and in the argument portion of her brief suggests that all of Defendant's discovery efforts were limited by the Protective Order. This is misleading. The Protective Order merely addressed the deposition of Dr. Zink. Defendant never challenged Plaintiff's objections to Defendant's interrogatories or requests for production of documents, and Defendant never sought to compel more from Plaintiff than the dis-

covery provided subject to those objections. Our task on appeal is thus limited to determining the appropriateness of the trial court's decision to enter a Protective Order limiting the scope of Dr. Zink's deposition.

Trial courts have broad discretion in administering the rules of discovery. *State ex rel. BNSF Ry. Co. v. Neill,* 356 S.W.3d 169, 172 (Mo. banc 2011). Reversal is warranted if a trial court abuses its discretion in entering an order that is clearly against the logic of the circumstances, is arbitrary and unreasonable, or indicates a lack of careful consideration. *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602, 607 (Mo. banc 2002).

Our discovery rules allow parties to "obtain discovery regarding any matter, *not privileged,* that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Rule 56.01(b)(1) (emphasis added). Section 491.060(5) deems a physician incompetent to testify "concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient." While the statute explicitly prohibits testimony, it has been construed as a privilege statute and applies to medical records and all aspects of discovery. *State ex rel. Dean v. Cunningham,* 182 S.W.3d 561, 566–67 (Mo. banc 2006).

■ The physician-patient privilege is not absolute, however. *Id.* at 567. " 'Once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under section 491.060(5) so far as information from doctors or medical and

hospital records bearing on that issue is concerned.'" *Id.* (quoting *State ex rel. McNutt v. Keet,* 432 S.W.2d 597, 601 (Mo. banc 1968)). "[D]efendants are not entitled to any and all medical records, but only those medical records that relate to the physical conditions at issue under the pleadings." *State ex rel. Stecher v. Dowd,* 912 S.W.2d 462, 464 (Mo. banc 1995).

Defendant's deposition notice to Dr. Zink sought by *duces tecum* (1) "All records that Dr. Zink has in regard to [Plaintiff] and/or this case"; and (2) "All medical records pertaining to [Plaintiff], including but not limited to files, documents, reports, tests, radiographs and notations." The document request was thus unlimited as to time or as to medical condition. Dr. Zink had been Plaintiff's primary care physician since 1996.

When Plaintiff sought a protective order, Defendant argued that unlimited access to Plaintiff's medical and treatment history by her primary treating physician since 1996 could reveal the cause of the May 2005 back strain Plaintiff disclosed in her interrogatory responses. Defendant also argued that Plaintiff's broad description of her damages and injuries in her petition opened the door to unlimited discovery on Plaintiff's medical and treatment history.

The trial court apparently agreed with Defendant's concern about the May 2005 back strain, as the Protective Order afforded Defendant unlimited access to Dr. Zink's records and testimony about any matters relating to Plaintiff's back. The trial court also apparently agreed that the petition's broad description of Plaintiff's injuries permitted Defendant access to Dr. Zink's records and testimony about *all* of Plaintiff's "injuries and illnesses," though the trial court limited this access temporally to conditions from and after January 1, 2005. Thus, the only cause for complaint

Defendant has on appeal is whether the temporal limitation imposed as to injuries or illnesses (other than Plaintiff's back) was an abuse of discretion.

We cannot conclude that the trial court abused its discretion in imposing a temporal limitation of approximately 3 1/2 years on discovery from Dr. Zink about Plaintiff's injuries or illnesses other than her back. In *Stecher,* plaintiff brought a medical malpractice suit against St. Louis University and two doctors practicing at St. Louis University Medical Center. 912 S.W.2d at 463. The plaintiff alleged that he had suffered "cardiogenic shock and vascular collapse" and will, in the future, suffer "severe pain of body and mind." *Id.* The defendants submitted a medical authorization without limitations as to time or condition. *Id.* at 463–64. The plaintiff refused to sign the authorization. *Id.* at 464. The defendants filed a motion to compel, which the trial court sustained. *Id.* Our Supreme Court noted that "broad allegations of injuries do not automatically entitle defendants to an essentially unlimited medical authorization." *Id.* Instead, the trial court has the authority to limit production of medical records to those that relate to the injuries claimed by the plaintiff in the present suit. *Id.* Ultimately, our Supreme Court decided that, even though the plaintiff's alleged injuries were broad and without precise limits, the medical authorization was "indefensibly broad," as it contained no limits as to time or to the particular case. *Id.* at 465.

In *State ex rel. Jones v. Syler,* 936 S.W.2d 805 (Mo. banc 1997), our Supreme Court reiterated the principle set forth in *Stecher.* In *Jones,* the plaintiff brought a personal injury suit against her husband and his employer. *Id.* at 806. The plaintiff alleged that she "suffered, suffers, and will suffer severe pain of body and mind." *Id.* The defendants submitted a medical

authorization requesting access to "any and all information with respect to any illness or injury, medical history, consultation, prescription, treatment, or diagnosis, and copies of all hospital or medical records." *Id.* The plaintiff refused to sign the authorization, contending that it was overly broad. *Id.* at 807. Following a motion to compel, the trial court ordered plaintiff to sign the authorization. *Id.* Our Supreme Court concluded that, despite the plaintiff's broad assertions of damage in her petition, the plaintiff was not required to sign the medical authorization, as it was not limited by time or by specific health care providers. *Id.* at 808. Thus, the trial court abused its discretion in ordering plaintiff to sign the medical authorization. *Id.*

While the discovery method at issue in this case was a notice of deposition *duces tecum* rather than a medical authorization, *Stecher* and *Jones* apply. As in *Stecher* and *Jones,* Plaintiff alleged that she "sustained severe and permanent injuries to her mind and body...." Defendant took advantage of Plaintiff's broad pleading and requested "all medical records pertaining to [Plaintiff]" in connection with its notice to depose Dr. Zink. Under *Stecher* and *Jones,* Defendant's unlimited *duces tecum* was subject to reasonable limitation as to time and condition. The Protective Order limited the scope of Dr. Zink's deposition as to time for all injuries or illnesses other than Plaintiff's back. Defendant offers us with no specific basis to conclude that she was prejudiced by this facially reasonable constraint.[3]

Defendant's third point is denied.

3. In her brief, Defendant argues that, as a result of the overbroad Protective Order, she was prejudiced because she could not fully investigate the cause of the back strain Plain-

## Conclusion

The judgment is affirmed.

All concur.

tiff suffered in May 2005. This is a disingenuous argument as the Protective Order afforded Defendant unlimited access to Dr. Zink's records and testimony about Plaintiff's back.