

# Missouri Court of Appeals

## Southern District

### en banc

FOX CREEK CONSTRUCTION, INC.,      )
     )
    Plaintiff-Respondent,      )
     )
v.      )      No. SD35668
     )
OPIE'S LANDSCAPING, LLC,      )      **Filed: November 19, 2019**
     )
    Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

#### Honorable Jennifer Growcock

## AFFIRMED

Opie's Landscaping, LLC ("Opie"), appeals the bench-trial judgment that ordered it to pay $40,250 to Fox Creek Construction, Inc. ("Contractor"). In two points, Opie claims the trial court erred by applying the wrong measure of damages to Contractor's breach-of-contract claim.[1] Because Opie has failed to meet its burden of demonstrating reversible error, we affirm.

---

[1] Opie's original appeal before this court contained an additional point relied on that caused us to transfer the case to our high court pursuant to Rule 83.02. Opie subsequently abandoned that point in its substitute brief, and our high court re-transferred the case. As a result, the only points left for our resolution are those analyzed herein. *See* Rule 83.08(b) and Rule 83.09. Unless otherwise noted, all rule references are to Missouri Court Rules (2019).

## Governing Principles of Review

"In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Director of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We begin with a presumption that the judgment is correct, and the appellant has the burden of proving it erroneous. *Flooring Sys, Inc. v. Staat Constr. Co.*, 100 S.W.3d 835, 837 (Mo. App. E.D. 2003).

## The Evidence[2]

Contractor was engaged by Mike and Annette Ensley ("Homeowners") to do some major remodeling of their home. Contractor's arrangement with Homeowners was a "cost-plus" contract that required Homeowners to pay Contractor the actual cost of the work plus 15% of that total cost as Contractor's profit. One portion of the remodeling job involved the construction of a waterfall outside of Mrs. Ensley's library window. Contractor sub-contracted with Opie to build the waterfall. Although Opie admitted that it had an oral contract with Contractor, Opie's brief fails to identify its specific terms.

Although Contractor had not previously used Opie to build a water feature, "[Opie had] hired a new guy from Wickman's Garden, Logan, who was specially in – specialized in water features, and [Opie] was going to get into the water features – putting in water features with Logan and that Logan could do the job." Opie gave Contractor an estimate of $35,000 to build the waterfall. It took Logan approximately one month to

---

[2] Unless otherwise necessary for context, we recite the relevant evidence and the inferences to be drawn from it in the light most favorable to the trial court's decision. *Heubel v. VSV, LLC*, 567 S.W.3d 276, 278 n.2 (Mo. App. S.D. 2019).

build the waterfall, and once it was completed, Contractor paid Opie the full $35,000 estimated price.

Shortly thereafter, Homeowners returned from a vacation and began experiencing problems with the waterfall. The first problem was that the waterfall was in the wrong location. To address the problem, Opie added a second, smaller waterfall that could be seen from the library.

The next problem arose when Homeowners discovered water "flying" down their driveway. That led to a discovery that the waterfall leaked – so much so that the pumps could not pump enough water to keep the waterfall flowing. Two months after the waterfall was completed, the leak was so bad that Homeowners' well pump was running 24 hours per day, resulting in large electric bills for June, July, and August. The rocks in the waterfall were not level and would move around. The liner was also "sticking outside" and "looked shoddy." Opie said[3] it had the wrong pumps, the wrong floats, and the reservoir was too small, but all of those deficiencies would be fixed. Despite those admissions, Opie continued to claim that the water loss was due solely to natural evaporation.

Frustrated with the lack of progress, Homeowners contacted Cliff Fitzwater ("Mr. Fitzwater"), owner of Fitzwater Design, who had extensive experience with water features. Mr. Fitzwater looked at the waterfall in approximately June 2016. He described the problems with the waterfall as: (1) a lot of liner showing; (2) the water falling over natural rock; (3) a water hose was running continuously; and (4) the reservoir size seemed small. Mr. Fitzwater advised Homeowners to contact Opie to fix the

---

[3] Although Logan was the person actually building the waterfall, it appears that Homeowners would go to Contractor about the problems that kept arising. Contractor would then communicate with Opie, and Opie in turn went to Logan. Opie eventually fired Logan from the job.

problems. The only way Mr. Fitzwater would have fixed the waterfall would be to rebuild it such that it did not fall over the natural rock, a job that would require removing the existing water feature and building a new one. He estimated the cost of removal and reconstruction to be approximately "35 – to 40-thousand."

In September 2016, after six months of continuing problems with the waterfall, Homeowners told Opie to remove it. Opie did so, and Homeowners never paid Contractor the $35,000 plus 15% profit that Contractor would have received from Homeowners if the waterfall had functioned correctly.

Contractor made a demand upon Opie to repay Contractor the $35,000 it had paid for the waterfall, plus an additional 15% that Contractor would have received from Homeowners if the waterfall had functioned properly. When that demand went unmet, Contractor filed the instant breach-of-contract suit, which prayed for damages in the amount of $40,250 (the $35,000 paid to Opie, plus Contractor's 15% lost profit).

The trial court entered its $40,250 judgment in favor of Contractor based upon the following undisputed evidence:

- Contractor contracted with Homeowners to install a water feature for $35,000 plus 15% profit;

- Contractor subcontracted with Opie to install the water feature for a cost of $35,000.

- Contractor paid $35,000 to Opie upon the installation of the water feature;

- After six months of Opie's failed attempts to repair the water feature, Homeowners demanded that Opie remove it, which it did;

- Homeowners did not pay Contractor the $35,000 plus 15% profit because Homeowners were not provided with a functioning water feature;

- Opie retained the $35,000 plus all materials used in constructing the water feature; and

4

- Mr. Fitzwater testified that it would cost at least $35,000 to reconstruct a functioning water feature.

This appeal timely followed.

**Analysis**

For ease of analysis, we address Opie's points together. Point 1 claims the trial court erred in awarding Contractor $40,250 in damages because such an award constituted a misapplication of law,[4] in that "under Missouri law, the proper measure of damages for a substantial but defective completion of a construction contract is the cost of repair[.]"

Point 2 claims the trial court's award of $40,250 in damages to Contractor was against the weight of the evidence, in that Contractor "failed to present evidence to rebut the presumption raised by [Opie] that the cost of reconstruction . . . would constitute an unreasonable economic waste."

"The proper measure of damages is a question of law for determination by the trial court." *Forney v. Missouri Bridge & Concrete, Inc.*, 112 S.W.3d 471, 474 (Mo. App. W.D. 2003) (quoting *Gee v. Payne*, 939 S.W.2d 383, 385 (Mo. App. W.D. 1997)). "The particular facts and circumstances of a case dictate which measure of damages is appropriate[,]" and the goal "is to put the non-breaching party in as good a position as it would have been in if the contract had been performed." *Id.* at 474.

Whether the trial court applied the proper measure of damages is a question of law that this court reviews *de novo*. *Penzel Constr. Co. v. Jackson R-2 School Dist.*, 544 S.W.3d 214, 236 (Mo. App. E.D. 2017). "An appellate court will reverse a judgment that

---

[4] Although not explicitly stated in the point relied on, we read Opie's argument as claiming that the trial court misapplied the law regarding the proper measure of damages.

5

awards damages for breach of contract if the record shows an absence of 'proof of actual facts [that] present a basis for a rational estimate of damages without resorting to speculation.'" *Cornejo v. Crawford Cty.*, 153 S.W.3d 898, 902 (Mo. App. S.D. 2005) (quoting *Gillham v. LaRue*, 136 S.W.3d 852, 856 (Mo. App. S.D. 2004)).

The fundamental flaw in Opie's challenge to the trial court's calculation of damages is that Opie treats the appropriate measure of damages as if its contract were with Homeowners instead of with Contractor.[5] The trial court found that Opie breached its contract with Contractor – a finding Opie does not contest on appeal. "The doctrine of material breach is simply the converse of the doctrine of substantial performance. Substantial performance is performance without a material breach, and a material breach results in performance that is not substantial." *Fire Sprinklers, Inc. v. Icon Contracting, Inc.*, 279 S.W.3d 230, 233 (Mo. App. E.D. 2009) (internal citation omitted).

Opie does not explain how its claim that it substantially performed on the contract can be reconciled with the trial court's unchallenged finding that Opie breached the contract. *Id.* at 234. Opie's argument is especially unconvincing given that, at the time of trial, Homeowners had *no* water feature whatsoever. As in *Fire Sprinklers*, Opie's contention that it substantially performed under the contract is not supported by the record. *Id.* "If one party materially breaches a contract, the aggrieved party may cancel the contract and be relieved of its performance under the contract." *Id.* Thus, after Opie breached the contract, Contractor was entitled to cancel the contract and sue Opie for a total breach. *Id.*

---

[5] To the extent that Homeowners might have qualified as a third-party beneficiary to the contract between Contractor and Opie, neither party has asserted such an argument nor made any attempt to bring Homeowners into the case.

> Damages [for a total breach] are calculated on the assumption that neither party will render any remaining performance. They therefore compensate the injured party for the loss that it will suffer as a result of being deprived of the balance of the other party's performance, minus the amount of any savings that resulted from the injured party not having to render any remaining performance of its own.

*Id.* (citing Farnsworth, Contracts, 581, section 8.15).

Here, it is uncontested that Contractor paid Opie $35,000 to build the waterfall for Contractor.[6] Had Opie constructed a satisfactory waterfall, Homeowners would have been obligated to pay Contractor $35,000 plus 15% profit for the waterfall; a total of $40,250. Opie never provided Contractor with a properly-functioning waterfall, and, as a result, Homeowners never paid Contractor the $40,250 Contractor would have received in the absence of Opie's breach. Despite its failure to provide Contractor with a properly-functioning waterfall, Opie refused to return the $35,000 that Contractor had paid. Thus, Contractor was entitled to recover $40,250, the amount necessary to fully compensate Contractor for Opie's breach. *See id.*

While Opie argues that Contractor was only entitled to recover $2,500, the cost that landscaping expert Mr. Edward Colby estimated would be necessary to repair the waterfall, the cost of repair is a measure of damages appropriate only in the case of substantial but defective performance, which the trial court found was not what occurred here. *See Stom v. St. Clair Corp.*, 153 S.W.3d 360, 364 (Mo. App. S.D. 2005). Further, at the time of trial, there was nothing *to* repair. Opie had done as Homeowners requested and removed the waterfall completely.

---

[6] Opie claims for the first time in its substitute brief that Contractor's payment for the waterfall constituted an implicit acceptance of Opie's performance. Because this argument was not made to the trial court, we do not consider it. Rule 78.07(b); *Smith v. Associated Nat. Gas Co.*, 7 S.W.3d 530, 534 (Mo. App. S.D. 1999) ("[i]t is a fundamental rule that contentions not put before the trial court will not be considered by the appellate court") (quoting *Strunk v. Hahn*, 797 S.W.2d 536, 549 (Mo. App. S.D. 1990)).

Given the judgment's uncontested finding that Opie breached the contract, Opie has failed to demonstrate that the trial court applied an incorrect measure of damages. As a result, Opie's additional claim that the judgment was against the weight of the evidence because Contractor "failed to present evidence of the cost of repair . . . to rebut the presumption . . . that the cost of reconstruction . . . would constitute an unreasonable economic waste" fails because no such evidence was relevant under the correct measure of damages used by the trial court.

Opie's points are denied, and the judgment is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

GARY W. LYNCH, J. – CONCURS

DANIEL E. SCOTT, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS